WILLIAM HEIN v. PEABODY COAL COMPANY, Appellant.

WILLIAM HEIN v. ROBERT A. CODY, Appellant.—85 S. W. (2d) 604.

Division One, July 30, 1935.

*Leahy, Saunders & Walther, Harold F. Hecker, Marion W. Smith* and *Lyon Anderson* for appellant.

*Eagleton, Henwood, Waechter & Yost* and *Frank P. Aschemeyer* for respondent.

FERGUSON, C.—This is an action for damages for personal injuries sustained when plaintiff, William Hein, was struck, as he was walking across Terry Avenue in the city of St. Louis, by an automobile owned by the corporate defendant, Peabody Coal Company, and driven by the defendant Robert A. Cody, an employee of that company. The cause was tried in the Circuit Court of the City of St. Louis resulting in a verdict for plaintiff, against both defendants, assessing damages in the sum of $27,000. As a condition to overruling defendants' joint motion for a new trial the trial court ordered a *remittitur* of $2500 which plaintiff made whereupon the motion for a new trial was overruled and judgment, in favor of plaintiff, entered for $24,500 from which defendants appealed. [1] Though granted and here docketed, briefed and presented as separate appeals, that of defendant Peabody Coal Company as No. 32,525 and defendant Cody's appeal as No. 32,526, our procedure is to treat and rule the appeals as one case. [Walsh v. Southwestern Bell Telephone Co., 331 Mo. 118, 52 S. W. (2d) 839; Morton v. Southwestern T. & T. Co., 280 Mo. 360, 217 S. W. 831; Sandusky v. Sandusky, 265 Mo. 219, 177 S. W. 390; Hugo .Ruehling v. Pickwick Greyhound Lines, 337 Mo. 196, 85 S. W. (2d) 602.]

The petition assigns several grounds of primary negligence and also charges a violation of, or negligence under, the humanitarian rule. The separate, but identical, answers are general denials followed by allegations of contributory negligence on the part of plaintiff. However, plaintiff abandoned the charges of primary negligence and tried and submitted the case to the jury on the sole theory that defendant Cody, the driver of the automobile which struck and injured plaintiff, was guilty of negligence under the humanitarian rule. The liability of the corporate defendant is wholly dependent upon the applicability of the doctrine of *respondeat superior*.

Neither defendant, as appellant, asserts here that plaintiff did not adduce substantial evidence making a case for the jury under the humanitarian rule but appellant coal company contends that the trial court erred in refusing its instruction in the nature of a demurrer to the evidence, tendered at the close of all the evidence in the case, on the ground that no substantial evidence was adduced tending to show that Cody was "acting within the scope of his duties as" its "agent," that is that he was acting within, or in the course of, his

employment by it at the time its automobile, which he was driving, struck and injured plaintiff. If the contention is sustained the judgment must, necessarily, be reversed as to the corporate defendant; on the other hand if there is substantial evidence in the record to warrant and support a finding by the jury that Cody was at the time acting within the scope of his employment by the coal company it is, in effect, conceded that a case was made for the jury as to both defendants. In that event the coal company joins appellant Cody in assigning certain alleged errors in plaintiff's given instruction numbered 1 covering the whole case, submitting the humanitarian theory, and authorizing a verdict for plaintiff. Appellants further assert that, notwithstanding a *remittitur* was made, the judgment entered is excessive.

The casualty occurred about seven o'clock P. M. the evening of October 22, 1930. Plaintiff was employed, and had been for fourteen years next prior thereto, as a teacher in the Soldan High School in the city of St. Louis. He resided "upstairs at 4942 Terry Avenue" which is on the south side of Terry Avenue, an east and west street of the city of St. Louis, in the block between Kingshighway, a north and south street, on the west and Euclid Avenue, a north and south street, on the east. The forty-nine hundred block, between Euclid and Kingshighway, on Terry Avenue is a distance of "six or seven hundred feet" and plaintiff's residence, on the south side thereof is about "one-third" of that distance east of Kingshighway. Terry Avenue is paved with asphalt, is thirty feet wide from curb to curb and "practically level" the entire length of the block. At about seven o'clock that evening plaintiff left his residence and started to cross the street to his automobile, which was parked alongside the north curb across Terry Avenue from his residence, intending to drive to the Soldan High School. As he was crossing the street he was struck by a Chevrolet coupe driven by defendant Cody and sustained severe injuries the nature and extent of which will later be referred to in discussing the complaint that the judgment is excessive.

The answer of the corporate defendant admits that it was the owner of the Chevrolet coupe and it is an admitted fact in the case that Cody was employed by the coal company as a salesman. We now review the evidence bearing upon the question of whether Cody was, at the time, driving the coal company's automobile in furtherance of its business or upon a mission in connection therewith, that is whether at the time he was pursuing the course of, and acting within the scope of, his employment by it. Cody testified that the "head office" of the Peabody Coal Company was in Chicago; that a "branch office" was maintained in St. Louis at which he was employed by the company and out of which he worked as a sales-

man; that C. E. Becker as district manager for the company was in charge of this St. Louis branch office and the St. Louis business; that the Chevrolet coupe which struck plaintiff, and which he was at the time driving, was owned by the coal company and "furnished" by it to him for his use in connection with and in the transaction of the company's business; and that the company "maintained" the automobile and the garage in which it was kept. It seems this automobile was used exclusively by Cody and was kept in a garage at his home. On direct examination Cody testified that at the time plaintiff was struck he (Cody) "was going to a meeting of the Coal Institute;" that "the Coal Institute was an educational institute where combustion ideas were brought out and problems worked out for anyone interested in the sale or use of coal economically or commercially;" that he "had not been asked," "instructed or required by any of" his "superiors in the Peabody Coal Company to attend these meetings" of the Coal Institute; and that he "went" to the meetings of the Institute of his "own volition" because he was "very much interested in his business as a coal salesman." But on cross-examination he testified that he had conversations with Mr. Becker (identified, supra, as the district manager for the coal company in charge of the St. Louis branch at which Cody was employed) concerning the Coal Institute and certain circulars issued by the Chicago office of the company relative thereto; that Becker advised him of the time of the meetings of the Institute; that these meetings were "held each week, on Wednesday night . . . at eight o'clock;" that he had attended meetings prior to this time; and that he attended the Coal Institute meetings "as a matter of weekly routine at the insistence of Mr. Becker." The foregoing is the sum of the evidence relative to Cody's employment by the coal company and the mission or enterprise in which he was engaged and was using the company's automobile at the time plaintiff was struck.

The burden being upon plaintiff to show that Cody was at the time driving the coal company's automobile upon a mission connected with, or in furtherance of, its business and was acting within, or in the course of, his employment the appellant coal company takes the position on its demurrer to the evidence that the record affords no substantial affirmative evidence to that effect or which would warrant and support such an inference. It is claimed that plaintiff is attempting to, and under the evidence must necessarily, rely alone upon the presumption that Cody was at the time acting in the course and scope of his employment which arises from the undisputed facts that the automobile was owned by the coal company, that Cody was employed by it and that the company "furnished" him the automobile, and "maintained" it, for his use in promoting and carrying on its business but, invoking the rule of Guthrie v.

·Holmes, 272 Mo. 215, 198 S. W. 854, and citing cases following and adhering to that rule, appellant coal company contends that the presumption was wiped out or destroyed by the uncontradicted evidence showing the real facts and that it affirmatively and conclusively appears therefrom that Cody was not engaged in any enterprise or mission connected with his employment by the coal company but on the contrary his attendance at the Coal Institute was a wholly voluntary and personal mission solely for his own benefit and interest and outside the scope of his employment by it, and· that the trial court should have so ruled, as a matter of law, and have given the instruction directing a verdict for it. :

In Guthrie v. Holmes, supra, we said: "If it be proved (as here) that the car was owned by defendant, and if it be further proved (as here) that the chauffeur was in the general employment of defendant, then the presumption arises that such chauffeur was within the scope of his employment when the accident occurred. This, however, is as broad as the rule goes. From such a showing the plaintiff has a prima-facie case resting upon this presumption. Presumptions of this character (like all presumptions as to a fact in a case) take flight upon the appearance in evidence of the real facts." The following from Berry on Law of Automobiles (2 Ed.), section 615, page 694, is then quoted with approval: "This presumption cannot stand in the face of positive proof of facts to the contrary; and where the plaintiff has relied upon such presumption and it has been opposed by positive evidence to the contrary, he must then produce evidence tending to disprove the defendant's positive testimony, or his prima-facie case will fall." In that case plaintiff relied alone upon the presumption and from defendant's positive and uncontroverted evidence it conclusively appeared that at the time of the accident defendant's chauffeur was driving defendant's automobile in violation of orders exclusively for his own purposes and upon a purely private and personal mission. There was no evidence in the case tending to show, or from which it could be reasonably inferred, that the chauffeur was at the time engaged in any service for the master or performing any of the duties of, or connected with, his employment. It was held that the defendant's demurrer at the close of the evidence in the case should have been sustained. Bolman v. Bullene (Mo.), 200 S. W. 1068; Horn v. Rhoads, 317 Mo. 572, 296 S. W. 389; Vallery v. Hesse Bldg. Material Co. (Mo. App.), 211 S. W. 95; Griffey v. Koehler (Mo. App.), 50 S. W. (2d) 693; and Ursch v. Herer, 210 Mo. App. 129, 241 S. W. 439, are cited by appellant coal company wherein the rule of Guthrie v. Holmes is referred to and applied. In the Bolman and Griffey cases, supra, no factual evidence was adduced tending to show the agency of the driver of the automobile while defendant's evidence indisputably

disclosed that the driver of the automobile, which inflicted the injury, in each case a relative of the defendant automobile owner, was not in the employment of defendant and was at the time engaged in some pursuit of his own and not in furtherance of any business, mission or purpose of the defendant. In the Horn case, supra, the undisputed evidence showed that the driver of the automobile was never at any time in the general employment of the defendant automobile owner for any purpose but though using the automobile with defendant's permission was "engaged in his own business and not that of defendant's." In both the Vallery and Ursch cases, supra, the driver of the automobile, which inflicted the injury, was an employee of the defendant automobile owner and that being the extent of the evidence in plaintiff's favor the plaintiff relied alone upon the presumption but it was held that the positive and unequivocal evidence on the part of defendant owner disclosed a state of facts showing conclusively, and as a matter of law, that at the time of the accident the employee "was not on the owner's business" and "was not acting within the scope of his employment but was then on a mission of his own" and that "no evidence whatsoever" was adduced to the contrary.

But according full recognition to the rule of law laid down in Guthrie v. Holmes and the foregoing cases nevertheless, in our opinion, the record in the instant case affords substantial evidence to warrant a finding by the jury that Cody was at the time of the accident, at the direction of defendant coal company's district manager, engaged in an activity connected with, and in furtherance of, the coal company's business and within the course or scope of his employment and therefore the trial court correctly ruled the coal company's demurrer to the evidence. As against the demurrer to the evidence the plaintiff is entitled to the benefit of any and all evidence in the case, that adduced by defendants as well as the evidence which he himself offers, and all favorable inferences which may fairly and reasonably be drawn therefrom, which tends to support his theory. Entirely disregarding the presumption as a factor in the situation and viewing the facts and circumstances in evidence relating to the ownership of the automobile, the relationship existing between the coal company and Cody and the mission in which he was at the time engaged, the nature, purpose and occasion thereof, and the fair and reasonable inferences therefrom, in the light most favorable to plaintiff we cannot say as a matter of law that the evidence conclusively and unequivocally shows that plaintiff was not acting in the course and scope of his employment but was engaged in a personal and private enterprise outside of his employment. Reasonable men might well draw different conclusions from the evidence herein bearing on the question raised by the demurrer. Therein the

instant case differs from the cases, supra, cited and relied upon by appellant. The coal company "furnished" and "maintained" the automobile for Cody's use in promoting and carrying on its business and he seems to have had the exclusive custody and use thereof. He was employed, as a salesman, at the St. Louis branch office and worked out of that office. The company's district manager, Becker, was in charge of the office. Cody refers to the Coal Institute as an "educational institution." It was devoted to the discussion of "ideas" and the solution of "problems," "economically or commercially" connected with "the sale and use of coal." It may readily and properly be inferred that it was to the mutual interest and benefit of both Cody and the coal company that he attend the meetings of the Institute. He says that Becker discussed the Institute with him and advised him of the time of the meetings thereof. Appellant apparently concedes that if it had requested Cody to attend the meetings of the Institute he would then have been engaged in the scope of his employment while in attendance thereon and traveling to and from a meeting but it is said he testified that he was not requested by any of his superiors to attend. However, he also testified positively that he had attended the meetings prior to·the date of this casualty and that he attended the meetings of the Institute "as a matter of weekly routine at the insistence of Mr. Becker." "Routine" implies that he attended the weekly meetings in the regular or customary course of the business in which he was engaged. That he did so at the direction of the district manager in charge of the office at, or out of, which he worked is implied by the use of the word "insistence." Certainly an employer's insistence that an employee do a certain thing in connection with and tending to promote and benefit the employer's business is even stronger than a mere request. The jury may well have accepted this testimony as the correct version of the matter considered in the light of all the other facts and circumstances in evidence especially the nature and purpose of the Institute, relating as it did to the coal business in which the company was engaged, and that Becker had discussed the Institue with Cody and advised him concerning the meetings thereof.

██ Appellants join in assailing certain language used in plaintiff's main instruction, numbered 1, submitting the humanitarian theory, as being confusing and misleading and say that on account thereof the instruction is prejudicial. The criticism is leveled at that part of the instruction reading, "and if you further find that *at and prior to* being thus struck plaintiff was . . . in a position of imminent peril of being so struck and injured by said automobile, and that the driver in charge of said automobile saw, or by the exercise of the highest degree of care on his part could have seen, plaintiff . . . in the aforesaid position of imminent peril, if you

so find, in time thereafter," etc. (Italics ours.) It is contended that the use of the words "at and prior to," italicized, supra, makes the instruction confusing and misleading, citing Rytersky v. O'Brine, 335 Mo. 22, 70 S. W. (2d) 538. In discussing the words "at and prior to," here used, the opinion in the Rytersky case refers to and comments on the opinion of the St. Louis Court of Appeals in Williams v. St. Louis Public Service Co. (Mo. App.), 54 S. W. (2d) 764, holding that the use, in a humanitarian instruction, of the words "at *or* prior to" (italics ours) "may have confused and misled the jury." In the Rytersky case Division One of this court said: "We have considered . . . the alleged error in plaintiff's principal instruction submitting the case on the humanitarian doctrine. It is the same error that is commented on in Williams v. St. Louis Public Service Co., . .. . except that the jury was told in this case that if plaintiff was in a position of peril 'at and prior,' instead of 'at or prior,' as in the Williams case, to the time she was injured and thereafter defendant could by reasonable care have averted the injury, to find for plaintiff. Perhaps the wording of the instruction in the present case is less confusing than in the Williams case, and we doubt very much if the jury was misled by it. The instruction, if read literally, is inaccurate as it is obvious that on a finding that plaintiff was seen in peril at the moment of the injury, the defendant could not thereafter avoid injuring her, but, such meaning being obviously impossible, the jury would not likely understand it that way. As a new trial must be granted on another ground, it would be better on another trial to so draw the instruction as to avoid this criticism." It will be noted that the opinion not only does not treat the use of the words "at and prior to" as prejudicial error but makes the observation, in effect, that while "literally inaccurate" "the jury would not likely" be misled thereby. In Davis v. Roth (Mo. App.), 65 S. W. (2d) 172, the St. Louis Court of Appeals ruled an assignment of error in the use, in an otherwise conventional humanitarian instruction, of the words "at and prior to," used in the instruction in the Rytersky case and the instruction complained of in the instant case. The opinion of that court in the Williams case, supra, was cited and relied upon by appellant in the Davis case. The Court of Appeals makes this distinction:

"The Williams case is not in point upon the record we have before us. There the instruction read 'at or prior' to the time of being struck, which is in the disjunctive, whereas in the instant case the instruction reads 'at and prior' to the time of said collision, which is in the conjunctive. The importance of this difference is observable in that in the Williams case, by use of the disjunctive, the jury were instructed that, if they found that 'at the time of being struck plaintiff became and was in a position of imminent peril of being struck by

the said street car in time thereafter. . . . The instruction clearly predicated a recovery upon a physical impossibility, and that part of the instruction was therefore meaningless and may well have served to mislead and confuse the jury. But in the instant case, by use of the conjunctive, necessarily the jury had to find that the plaintiff was in a position of imminent peril of being struck prior to the time of being struck, in time thereafter to have slackened the speed of defendant's automobile, and . . . swerved the same from the automobile in which plaintiff was riding, and that by doing so the defendant could have avoided the collision and injuries to plaintiff. And . . . though the use of the word 'at' was improper in the instruction, yet, since it was used in the conjunctive with the words 'and prior to the time of the collision,' the jury could not follow and apply the instruction and return a verdict for plaintiff without finding that plaintiff's position of peril existed prior to the actual collision and prior thereto in point of time sufficient for the defendant thereafter to have slackened the speed of the automobile and to have swerved the same away from the automobile in which plaintiff was riding, and thereby have avoided the collision.

"In the light of this difference between the instruction before us and that of the criticized instruction in the Williams case, we are constrained to hold that the error complained of, upon the record in this particular case, was not of such a nature as materially to affect the verdict, and the point is accordingly ruled against appellants."

In Brown v. Callicotte (Mo.), 73 S. W. (2d) 190, Division Two of this court discussed language, very similar to that here complained of, used in the humanitarian instruction given in that case. It was there said:

"Appellants contend that the phrase, 'as said automobile approached and reached said wagon' makes said Instruction No. 3 erroneous, that 'It fixes the position of peril as beginning when the automobile approached and reached the wagon,' and that it is ambiguous, confusing and self-contradictory. They seek to separate the phrase into two separate and distinct directions, either of which would authorize recovery—one authorizing a finding that plaintiff was in peril 'as the automobile approached' the wagon, no matter how far distant since all the time it was 'approaching' the wagon, even when it was on another street and before any peril could possibly have arisen; the other that plaintiff's peril arose 'as' or when the automobile 'reached' the wagon, which would be the moment of contact, after which, manifestly, there was no time in which to act to avert the collision. We are satisfied the jury could not have so understood, or rather misunderstood, the instruction. It required the finding that, as the automobile approached and reached the wagon, plaintiff was in imminent peril 'from the approach and movements'

638

of the automobile, and that Callicotte saw or should have observed him in such position in time thereafter with safety, etc., to have swerved to the north. The instruction does not purport to fix the precise time or place at which plaintiff's peril began. It merely directed the jury that, if they found from the evidence that, as the automobile 'approached and reached' the wagon, plaintiff was in peril from the approach and movements thereof, etc. The jury could not have understood that direction to refer to the time when the automobile . . . could not possibly menace plaintiff nor, taking the instruction as a whole, could they have understood it to mean that plaintiff was not in peril until the vehicles came in contact with each other.''

The opinion then refers to and quotes with approval from the opinion of the St. Louis Court of Appeals in Davis v. Roth, supra, and concludes:

''The same reasoning applies here. The jury could not follow and apply Instruction No. 3 and return a verdict for plaintiff without finding that plaintiff's peril existed prior to the actual collision and prior thereto in point of time sufficient for Callicotte thereafter to have swerved his car and thereby have avoided the collision.''

The instruction in the present case, worded as it is in the conjunctive, predicates a verdict for plaintiff upon, and requires a finding by the jury that plaintiff was in a position of imminent peril prior to the time he was struck and that defendant saw, or by the exercise of the proper degree of care could have seen, plaintiff in such position of peril in time thereafter to have swerved the automobile and slackened the speed thereof and thereby have averted striking plaintiff. We are constrained to follow the reasoning and ruling of the foregoing cases and therefore rule the assignment against appellants.

Appellants next allege that plaintiff's instruction is erroneous in that ''it did not require a finding by the jury, that Cody could have averted the injury without injury to others who might have been on the highway at the time.'' The instruction requires a finding that the driver, Cody, could ''with the means and appliances at hand and with reasonable safety to said automobile and the said driver thereof'' have ''slackened the speed of said automobile and . . . swerved the same away from plaintiff'' and thereby ''have avoided striking . . . plaintiff.'' This objection requires that we revert to the evidence relating to the manner in which the accident occurred and describing the situation at the scene thereof. Plaintiff Hein came from the house where he and his family resided, situate on the south side of Terry Avenue, passed between two automobiles standing close to and alongside of the south curb of the street and into the street and then walked toward his own auto-

mobile which was standing against and alongside the north curb. One Flaherty was seated in the driver's seat of the westernmost of the two automobiles, standing alongside the south curb, between which plaintiff passed into the street. As he passed in front of the Flaherty automobile plaintiff spoke to Flaherty. As he went into the street from between the two automobiles plaintiff looked to the east, no traffic was coming from that direction; he then looked to the west and saw the lights of an automobile approaching on the right side of the street, that is south of the center of the street. The automobile was then 100 or 150 feet to the west traveling about twenty miles an hour. This automobile was driven by one Concannon. Plaintiff continued walking slightly northwesterly toward his automobile which was standing alongside the north curb. When plaintiff reached a point on the north side of the street and but a few feet south and east of his automobile, and the Concannon automobile was yet about fifty feet to the west, this Chevrolet coupe driven by Cody swerved from behind the Concannon automobile to the north side of the street, traveling at a speed of forty miles an hour, passed the Concannon automobile and without any slackening of speed continued on the north side of street and struck plaintiff who was at the time about four feet from and attempting to jump to the running board of his own automobile in an effort to escape. Concannon testified that when the Chevrolet struck plaintiff he stopped his automobile "thirty or forty" feet west of the point where plaintiff was struck. Plaintiff's evidence is that upon passing the Concannon automobile Cody made no effort to swerve or turn again to the south or right side of street though there was no traffic to obstruct or prevent. Cody testified that the Concannon automobile was not traveling in front, or ahead of, his automobile; that he did not swerve to the north side of the street and pass or go around any other automobile; that no automobile other than the Chevrolet he was driving was traveling or moving in that block; that he was at all times driving on the south, or right, side of the street; and that plaintiff suddenly stepped from between two parked automobiles standing alongside the south curb into the path of his automobile. We restate appellants' complaint that the humanitarian instruction "did not require a finding by the jury that Cody could have averted" the striking of plaintiff "without injury to others" who "were on the highway at the time." According to plaintiff's evidence the others on the street within that block at the time were Flaherty, seated in one of the parked automobiles standing close to and alongside the south curb, and Concannon who was driving his automobile, which Cody swerved around, eastwardly on the south, or right, side of the street. If plaintiff's evidence is accepted as the true version of events Cody had ample space, the width of the unobstructed street between the automobiles

standing alongside the curb on each side of the street, at least eighteen feet of clear space, in which to operate and within which to swerve his automobile and avert striking plaintiff with safety to himself, his automobile and to Flaherty nor would Concannon have been imperiled for his automobile was yet fifty feet west when plaintiff was struck whereupon he stopped and his automobile was then at least thirty feet west of that point. According to plaintiff's evidence Cody could not, by swerving, have imperiled the safety of any "others" who were then on the street. According to defendant's evidence the only other person on the street, at that time, was Flaherty. Defendant's evidence was positive that Concannon's automobile was not there nor any other automobile or traffic except the **Chevrolet which Cody was driving.** But appellants contend that according to Cody's testimony he was driving on the right, or south, side of the street and that had he swerved to the right the Chevrolet might have collided with the automobile in which Flaherty was seated and therefore this evidence required a reservation in the instruction that Cody could have swerved the Chevrolet with safety, or without injury, to others then on the street. However, it is inconceivable that Cody "with reasonable safety" to himself and his own automobile, as the instruction requires the jury to find, could have swerved the automobile into a collision with the automobile in which Flaherty was seated. The instruction required a finding that Cody could have swerved with safety to himself and his automobile "which necessarily included a finding that he could have done so without colliding with the parked cars, because otherwise he could not have done so with safety to himself and his car." [Brown v. Callicotte, supra.] We think the conditions laid down in the instruction sufficiently meet the situation shown by the evidence in the case and that as worded could not have been prejudicial to defendants. Further appellants offered and the court at their request gave their instruction (the converse of plaintiff's humanitarian instruction) in which substantially the same language is used and conditions prescribed. That instruction authorizes and directs a verdict for defendants if the jury finds, among other facts enumerated, that "at the time he (plaintiff) first came into a position of peril, if any, defendant Cody could not by the exercise of the highest degree of care, with the means and appliances at hand, *and with reasonable safety to himself and his said automobile* have stopped said automobile, slackened the speed thereof, swerved the same, or given a warning signal of its approach, in time," etc. (Italics ours.)

Lastly appellants make the assignment, and list same under their points and authorities, that: "The judgment is excessive." No authorities, by way of comparison, are cited or referred to nor is the evidence relating to the injuries analyzed or reviewed. In

the argument, appearing in the appellants' briefs, it is said merely that, "while plaintiff's injuries were quite severe they consisted mainly of broken bones which have healed and plaintiff is at the present time able to carry on his vocation as a school teacher. We submit that a review of the medical testimony will" show that the judgment "is far in excess of just compensation for the injuries received." As stated plaintiff, who at the time of the trial was fifty-five years of age, was, and for a long period of years had been, a teacher of biology in the Soldan High School in the city of St. Louis. His salary as teacher in the day school was $320 a month; for night school work he received $48 a month, working eight evenings a month; and as a teacher in the summer school he was paid a salary of $400 for a term of ten weeks. Prior to the injury plaintiff was a strong, sound, able-bodied man. He was injured October 22, 1930. At the De Paul Hospital where he was first taken it was found he had sustained a comminuted fracture of the tibia of his right leg, extending into the ankle joint; a fracture of the tibia and a compound fracture of the fibula of the left leg; a transverse fracture of the humerus of the left arm about three inches above the elbow joint; a deep cut, six inches long, across the forehead; a concussion of the brain; a severe injury to his back and left side and chest; a loosening of the upper front teeth; and numerous bruises, contusions and lacerations of the head, body, arms and legs. He remained at the De Paul Hospital from that date, October 22, 1930, until January 4, 1931. At the time he left that hospital the bones of the left leg had not united. He resumed teaching in the day school about February 1, 1931, but was required to wear a steel brace on his left leg and use two crutches to get about. He continued the effort to carry on his day school work until the early part of May when he was compelled to go to the Missouri Baptist Hospital where several bone-grafting operations were performed in an effort to produce a union of the bones of the left leg. The trial was approximately eighteen months after the accident. The evidence as to plaintiff's condition was that both legs were very much swollen and the motion in both feet limited; that the left leg is one and a quarter inches shorter than the right, that there is a ten inch scar on the left shin which has adhered to the structures underneath, that the left ankle was very thick due to a chronic swelling and thickening of the structures about the bone, that there is a bony thickening about the site of the fracture of the left tibia; that there is a ten inch scar on the right shin and that the right ankle is swollen; that there is a six-inch scar on plaintiff's forehead; that, the left arm is three-fourths of an inch shorter than the right and is atrophied between the elbow and the shoulder, there is a partial numbness of that arm between the elbow and wrist which was almost complete on the inside portion

and that the grip of the left hand is reduced as much as 75 per cent; that there is a spasticity, or jerkiness, of the loin muscles at the waist line; that the brain concussion resulted in an organic injury to the brain and nervous system which causes extreme nervousness, sleeplessness and headaches which will continue in the future; that he cannot turn his head or body "sideways" without severe pain; that he is troubled with abnormal kidney action and "sometimes" had to relieve the kidneys as often as "every half hour or hour;" that these conditions are permanent and that "neither leg will ever improve to the extent" that he can ever "discard the use of crutches or artificial support" and "he will be obliged to use two crutches the remainder of his life. Plaintiff was compelled to give up his teaching in night school and summer school. To the date of the trial he had paid, and became obligated, for medical, surgical and hospital expenses the amount of $2300 and lost wages in the amount of $2100, an aggregate of these items, to that time, of $4400. In view of the serious and permanently disabling nature of the injuries we are not inclined to reduce the amount of the judgment entered by the trial court after the *remittitur*. The trial court saw plaintiff, heard the testimony of the numerous and highly competent medical witnesses and we are constrained, in this instance and upon this record, to defer to the judgment of the trial court.

No reversible error appearing the judgment of the trial court is affirmed. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.