Nina Riggs v. S. M. Higgins et al., Metropolitan Life Insurance Company, Appellant.—106 S. W. (2d) 1.

Court en Banc, June 5, 1937.*

*NOTE: Opinion filed at September Term, 1936, March 24. 1937; motion for rehearing filed; motion overruled at May Term, 1937, June 5,. 1937.

(1)

2

HAYS, C. J., TIPTON, LEEDY and ELLISON, JJ., concur.

GANTT, J., dissenting on rehearing with whom FRANK and DOUG-LAS, JJ., concur.

*A. E. Spencer, A. E. Spencer, Jr.,* and *Mosman, Rogers, Bell & Buzard* for appellant.

4

*Karl Greenhaw* and *Ruark & Ruark* for respondent.

COLLET, J.—This case comes to the writer on reassignment. Respondent, plaintiff below, brought this action against S. M. Higgins and the Metropolitan Life Insurance Company to recover damages for the death of her husband, alleged to have been caused by the negligence of Higgins. Respondent obtained a judgment for $10,000 against both defendants. The Metropolitan Life Insurance Company appealed.

Higgins was employed by appellant as its agent. His duties were to make collections of insurance premiums due the company and to solicit policies of insurance. That work was confined to a definite, assigned territory consisting of a part of the city of Neosho and some outlying contiguous territory. Higgins owned an automobile which he used in going from place to place within his territory in the discharge of his duties.

Appellant had an established custom of calling all of its agents in the so-called Joplin district in to Joplin for instructions. These meetings were held almost every week. Notices of these meetings were given the agents in advance and they were expected to attend. Higgins was notified that such a meeting was to be held at Joplin on the morning of December 5, 1931. Joplin was not in the territory assigned to Higgins but the latter territory was within the Joplin district. On the morning of December 5, 1931, Higgins and his wife and daughter left Neosho in Higgins' automobile. Higgins intended to attend the meeting at Joplin that morning. His wife and daughter were to go on to Webb City in the automobile to visit and later in the day return to Joplin, meet Higgins and all three return to Neosho. On the way to Joplin Higgins' automobile struck respondent's husband, inflicting injuries from which he died. Higgins

was driving the automobile. The circumstances surrounding the accident need not be related since appellant concedes for the purposes of this appeal, that there was evidence that Higgins negligently operated his automobile and thereby struck and killed respondent's husband and that the latter was free from negligence.

The facts incident to the relationship between Higgins and appellant are stated in appellant's brief as follows:

"The primary question is the relation between Higgins, the driver of his car, and the appellant, on the former's journey from Neosho to Joplin and at the time and place of the accident. All the evidence as to this, as well as Higgins' general relation to appellant, comes from two witnesses, viz.: Darnell, a witness for plaintiff, and Higgins, a defendant. There is no conflict in their testimony. Each was an agent of appellant, assigned to specific territory in Newton County. Their duties were to go over their respective territories and there to collect premiums payable weekly or monthly as they became due and there to try to sell insurance. They deposited their collections in a Neosho bank, to the credit of the manager of the Joplin office, and a duplicate deposit slip was sent to that office. The agents were paid on a commission basis. The territory given Higgins was a part of Neosho and along the highway to Seneca on the west and the highway to Goodman to the south. He could not work in any other territory. When he took an application for insurance he had the application signed, and it was his duty to get it to the Joplin office either by mail, by the manager or assistant manager when he was in Neosho, as they were frequently, or in person as he might determine. Higgins reported to the Joplin office by mail about every day and so received instructions from that office.

"When Higgins was employed he had a car; it was necessary for him to use it in making his trips over his territory and this he did. The manager knew he did this, and knew Higgins had the car when he was employed. Appellant did not pay Higgins anything for the use of the car; it belonged to Higgins, was registered in his name and he bought the license; he kept up the expense of the car and appellant did not have anything to do with any of these matters.

"At irregular periods, but once every week or two weeks, there was a meeting in Joplin of all the agents working under that office, Higgins being one thereof. Notice of the meeting would be given to each agent and he was expected to attend. At these meetings they would do a little detail work possibly in the morning and hold pep meetings and give out instructions about the work.

"Darnell testified that employees like himself and Higgins worked except on these meeting days. The employees who attended the meetings came by any way, over any route and by any sort of conveyance; the only requirement of appellant was that each got there

by his own way or method. The appellant had no control over the agent's car when working his territory except the agent had to get over his territory. Appellant paid a commission to such employees, and the employee decided his own way of getting about; all that was necessary was that he get around to see the people in his territory on the days their payments fell due. On meeting days the agent simply reported there at the designated time. Appellant did not exercise any control except to give the notice of the meeting. The agent did not have any business for appellant until he reached the meeting.''

Higgins also testified as follows:

''I always drove up to these meetings in my car and I supposed the people in the Joplin office knew it. As far as I knew the car was the only practical way to get there that time in the morning.''

Ralph E. Darnell, a witness for plaintiff, gave the following testimony:

''. . . When it is decided to have a meeting a notice is given to the men that there will be a meeting at a certain time and place; the employees who attend that meeting will come to it in any way, by any route or by any sort of conveyance; the only requirement of the company is that they get to the place of the meeting. The company doesn't care whether the man starts the night before and comes up and stays in Joplin, or goes to Webb City and stays; the only requirement is that he get there to attend the meeting by his own way or method.''

It is readily apparent that Higgins was in the general employ of appellant in the sense that a railroad conductor or street railway motormen are throughout their day's work, but to settle liability upon the employer an express or implied direction to the employee to do the thing resulting in the injury must have been given, or, if that be lacking, and facts appear which show an express or implied reservation of the right to control the employee's actions as to the mode or method of discharging his duties, the employer will be liable although the employee may disobey orders and adopt a mode or method prohibited. [Hilsdorf v. City of St. Louis, 45 Mo. 94; Smothers v. Furnishing Co., 310 Mo. 144, 274 S. W. 678.] The same logic which prompts the statement that ''it is not the fact of actual interference with control, but the right to interfere that marks the difference between an independent contractor and an agent or servant'' (Aubuchon v. Security Const. Co. (Mo. App.), 291 S. W. l. .c. 189), applies in determining whether an agent or servant is acting within the terms or scope of his employment in the commission of a particular act which results in injury to others.

In the present action the facts wholly fail to show any specific or implied direction to Higgins to go to Joplin by automobile unless mere knowledge on the part of appellant's officers of the fact that

Higgins owned an automobile and frequently used it in going to these meetings is sufficient to warrant a finding that appellant directed this particular mode of travel. But proof of mere knowledge on the part of the employer that the employee had used his car for this purpose is not sufficient. Neither was it shown that it was necessary to the discharge of the direction given that he use this particular mode of travel. Therefore we may proceed to the determination of the question of whether appellant reserved the right to control the manner in which Higgins' duty to get to Joplin was to be performed. A great many authorities are cited from this and other jurisdictions which the parties construe as supporting their opposing contentions, but we find no better statement of the general rule than the following expression of this court in the early case of Hilsdorf v. City of St. Louis, 45 Mo. 1. c. 98:

"The rule that prescribes the responsibility of principals, whether private persons or corporations, for the acts of others, is based upon their power of control. If the master cannot command the servant, the acts of the servants are clearly not his. He is not master, for the relation implied by that term is one of power, of command; and if a principal cannot control his agent, he is not an agent, but holds some other or additional relation. In neither case can the maxim *respondeat superior* apply to them, for there is no superior to respond."

In Semper v. The American Press, 217 Mo. App. 55, a man named Bresler was employed to deliver newspapers in bundles to dealers. He used his own motorcar and was paid a stipulated sum per trip. Negligent operation of the car resulted in injury to another for which injury suit was brought against Bresler and his employer. The employer defended upon the ground, among others, that Bresler was an independent contractor and not its agent or servant. By the terms of his employment Bresler was required to maintain and pay the expense of operating the automobile. The court held the employer's liability for the jury because, as there stated—"it does not appear that he (Bresler) was entitled to discard the automobile and employ other means of conveyance and adopt other methods, in making deliveries as he might choose." If the evidence had clearly shown that Bresler was a "free agent" in the selection of the means of transportation there would have been no necessity for leaving that question to the jury and if such had been the case we may surmise that the result reached would have been different.

Hoelker v. American Press, 317 Mo. 64, 296 S. W. 1008, involved the question of whether Nowak, employed to deliver newspapers in bulk to newsboys, was the agent of the newspaper company or an independent contractor. He used a motorcycle which he owned

and maintained. This court en banc determined the case on appeal. This significant language appears in the opinion, l. c. 1012:

"The chief difference between that case and this one, not without materiality, lies in the fact that here the inference reasonably arises from what was said in the informal conversation between the parties that the means required to be used by Nowak in making his deliveries was a motorcycle."

It is readily apparent that there the employer not only reserved the right to control the means which the agent or servant was to adopt in discharging his duties but actually required the use of this particular conveyance.

In Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049, Division One of this court held that where a salesman driving his own automobile from his office to call on a customer for the purpose of selling the customer a bill of goods for the employer, caused an injury by the negligent operation of the automobile, the employer was liable. But in that case there was an express ratification of the use of the automobile as well as an implied direction to use it because, as Judge FRANK points out,—"appellant (the employer) paid the cost of upkeep on the car in consideration of the use thereof in its service."

Again, in Aubuchon v. Security Construction Co., supra, the employer was held to be responsible for the negligent act of the servant for the reason that the employer reserved the right to control the manner of doing the work in the discharge of which an injury was inflicted.

Schmitt v. American Press (Mo. App.), 42 S. W. (2d) 969, was a case involving the liability of the employer for an injury inflicted through the negligent operation of a truck owned, maintained and operated by the employer. At the time of the injury the truck was being used to pick up unsold newspapers for the employer prior to the commencement of the employee's regular day's work. The court held the employer liable. That part of the opinion which is significant for present purposes follows, l. c. 972:

". . . And not only was Fletcher *obeying an order of appellant at the time*, regardless of when the order may have been given. . . . Consequently, we think the conclusion is inescapable that Fletcher, while on his way on the morning in question, was at all times at a place where, in the performance of his duty, he was required to be, and where appellant's interests were being served."

Obviously, in that case there was a specific direction as to the mode of performing the servant's duty.

Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, was determined by this court en banc. The facts were: Waldbauer was employed by a grocery company as a salesman and collector of

accounts. He traveled in an automobile the negligent operation of which injured a pedestrian. Although the opinion does not definitely state whether the automobile was owned and maintained by the agent, a reference to the record discloses that it was owned and maintained by him. From the following language it appears that liability was predicated upon the employer's knowledge of the agent's use of the automobile, and that such knowledge was treated as sufficient to warrant the conclusion that the employer had directed the use of the automobile or had reserved the right to control the method or means of travel which the agent should utilize and had ratified the use of the automobile.

"It was shown that the company knew Waldbauer was using a car in making sales and collections. In 42 Corpus Juris, page 1128, section 900, we read: 'Where, with the express or implied assent of the employer, an employee uses a vehicle which the employee owns in the discharge of his duties, the employer will be liable for an injury occasioned by its negligent operation by the employee while acting within the scope of his employment.' [See, also, Brauch v. Skinner Bros. Mfg. Co., 330 Mo. 760, 51 S. W. (2d) 27.] A salesman, returning home from a journey on behalf of his master, is acting within the scope of his agency. [Teague v. Laclede-Christy, etc., Co., 331 Mo. 147, 52 S. W. (2d) 880; Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S. W. (2d) 264, l. c. 271 (13, 14), 94 A. L. R. 751.]"

That the text quoted did not intend to infer that mere knowledge was sufficient to support the conclusion that the employer directed the use of the automobile or reserved the right to control the kind of conveyance to be used is made reasonably clear by the sentence following that just quoted (42 C. J., p. 1128):

". . . The employer is not liable where at the time of the injury the employee is not acting within the scope of his employment, *nor is he liable unless he has either expressly or impliedly, authorized the use of the vehicle,* or where he is merely the hirer of the vehicle without control of the manner of its operation."

The authorities upon which the conclusion stated in the Borgstede case is based (cited in the above-quoted excerpt from the opinion) are all cases involving the construction of the special provisions of the Workmen's Compensation Act and are not necessarily controlling in cases of this character. [See Jackson v. Euclid-Pine Investment Co., 223 Mo. App. 805, 22 S. W. (2d) 849, l. c. 851, and Stockwell v. Morris (Wyo.), 22 Pac. (2d) 189.] To the extent that the Borgstede case and the *obiter* in McCaughen v. Missouri Pacific Railroad Co. (Mo. App.), 274 S. W. 101, may be considered as holding that mere knowledge on the part of the employer of the use by the employee of a particular instrumentality, is sufficient to warrant or

sustain a finding that the employer directed the use of the instrumentality or reserved the right of control of the character of instrumentality to be used, these cases should be no longer followed. Many more cases are cited which need not be considered since the proper rule is sufficiently illustrated by those referred to. The evidence disclosing as it did that the employer neither directed the use of the automobile by Higgins nor reserved the right to control the manner in which Higgins should travel in going to Joplin, the judgment against the employer should be reversed. The only appellant being the Metropolitan Life Insurance Company, the judgment is therefore reversed. *Hays, C. J., Tipton, Leedy* and *Ellison, JJ.,* concur: *Gantt* and *Frank, JJ.,* dissent.

GANTT, J. (dissenting on rehearing).—The principal opinion has misconceived the case. It ruled same solely on a question of ''mere knowledge'' on the part of the employer that the employee used the car in traveling to Joplin. I agree that on this record ''mere knowledge'' did not fix liability on the employer. However, I do not agree that the record presents merely a question of knowledge on the part of the employer that the employee used the car to Joplin. The question of ''mere knowledge'' was a ''straw man to be knocked down.''

Furthermore, this is not a case of a conductor going home at the end of his trip. Neither does the record present a question of liability of the employer for the negligence of an employee while driving his car from home to a fixed place of employment, nor a question of the liability of an employer for the negligence of an agent solely authorized to bring about contractual relations between his employer and others on his own initiative and by his own methods, nor a question of whether or not the person causing the injury was an independent contractor or a servant. Even so, the principal opinion cites Aubuchon v. Security Const. Co. (Mo. App.), 291 S. W. 187; Semper v. American Press, 217 Mo. App. 55, 273 S. W. 186; Hoelker v. American Press, 317 Mo. 64, 296 S. W. 1008, and Hilsdorf v. City of St. Louis, 45 Mo. 94. From the last-cited case they quote as follows:

''The rule that prescribes the responsibility of principals, whether private persons or corporations, for the acts of others, is based upon their power of control. If the master cannot command the servant, the acts of the servants are clearly not his. He is not master, for the relation implied by that term is one of power, of command; and if a principal cannot control his agent, he is not an agent, but holds some other or additional relation. In neither case can the maxim *respondeat superior* apply to them, for there is no superior to respond.''

The above-stated rule is without application to the facts of this

case. In that case it was a question of whether or not the injury was caused by an independent contractor or servant. The other cases above noted also ruled such a question. In those cases the question turned on whether or not the employer controlled or had the right to control the method, manner and detail of the work to be performed. In the case at bar there is no question of control, for the opinion admits that the driver of the car was in the general employment of defendant. If so, he was under the control of appellant while in the performance of the duties required of him under the employment. It follows that the only question is whether or not there was substantial evidence tending to show that Higgins was acting within the scope of his employment in using the car for transportation to Joplin. There was no express direction to use the car, but if appellant impliedly directed said use, Higgins acted within the scope of his employment in using the car to Joplin. If so, appellant must be charged with control of the car while being so used.

The principal opinion ruled the case on appellant's statement of facts. The statement is argumentative and favorable to appellant. At the beginning of the employment the assistant manager made trips with each new employee over his territory, instructing him with reference to the work and furnishing him with a list of policyholders from whom to collect. Each owned the car used in performing his duties under the employment. Each paid for the license issued in his name. Each kept the car in repair, and furnished the gas and oil during said service. The witnesses Darnell and Higgins gave the only testimony on the question. They were agents of appellant and resided in Neosho. Each was assigned a large territory in which he collected weekly premiums for insurance. For this work each was paid a commission. Each also sold insurance for which he was paid a percentage of the premium. Each also was required to attend weekly or almost weekly meetings at the district office in Joplin. All of the agents within the district were required to attend said meetings. They were "pep meetings" at which instructions from the home office were considered, the work performed by the agents reviewed, and instructions of the district manager for the succeeding week or weeks were received by the agents.

They deposited collections in the bank at Neosho to the credit of the district manager, sending him a duplicate deposit slip. The applications for insurance were either mailed, delivered in person to the district office, or to the assistant manager who was in Neosho once or twice a week. They mailed daily and weekly reports in writing to the district office and received by mail daily instructions from said office. They obeyed the orders of appellant with reference to collections, district meetings at Joplin, and the sale of insurance.

The principal opinion did not consider and analyze the testimony.

On the contrary, after adopting appellant's statement, it merely proclaimed that there was no evidence tending to show an express or implied direction to Higgins to use the car in traveling to Joplin. After doing so, it argued a question of "control" as ruled in independent contractor cases.

In determining the submissibility of a case it is the mandatory duty of this court to give plaintiff the benefit of all the facts and reasonable inferences. In this connection it should be noted that appellant's statement omitted testimony of Higgins *that he was to use his car in making the rounds.* It also is stated in said statement that Higgins and Darnell were "expected" to attend the meetings at Joplin, whereas, the evidence shows that they were required to attend said meetings. Higgins, the driver of the car, testified as follows:

"The district manager, Mr. Lee, hired me. It is 6 or 7 miles south of Neosho to Goodman and that is as far south as I went. *It was necessary to use my car in making this territory. The company did not furnish me a car but I was to use my car in making these rounds, and the company manager knew I was doing this and that I had a car when he hired me.* I made reports about every day in writing and mailed them to the Joplin office. I got letters of instruction from the Joplin office every day or so. I obeyed the orders of the company and tried to do as they instructed. When they wanted me to report at the meetings in Joplin, of course, I went as they ordered me. . . .

"At these meetings we sometimes reviewed the business we have done for the past weeks and Mr. Lee would quite often talk to us and instruct us in our work and in the art of selling, sometimes we would have pep meetings and different employees would give talks on how to better the business and new ideas on how to sell. That was one of the purposes of the meeting. Sometimes, if a man would be doing something wrong Mr. Lee would correct him. I always drove up to these meetings in my car and I suppose the people in the Joplin office knew it. *As far as I knew the car was the only practical way to get there that time in the morning."* (Italics ours.)

Darnell testified as follows:

". . . It was necessary for Higgins to use his car in the business. Joplin is twenty miles from Neosho. It is necessary to use a car or some means of conveyance to go from Neosho to Joplin. The agents living in Carthage and Joplin come to the meetings sometimes on the street cars. Those in outlying territories presumably come in their cars. I use one. There is only one railroad between Neosho and Joplin. Cars are practically the only way to get to Joplin. There is some railroad service between Neosho and Joplin and a regular bus service also."

The question of implied direction must be determined from the facts and circumstances, including the nature of the work, conditions under which it must be performed, and the requirement of the employment.

From the above-stated testimony it could not reasonably be inferred that Higgins' car was used in said service without compensation. It would be absurd to so infer. It could be inferred that the parties to the contract of employment considered the commissions and percentage on premiums sufficient to compensate Higgins for his services and the use of his car. In other words, the jury could find that appellant hired both Higgins and the car. If so, it also could find that appellant, in effect, was using the car while same was used by Higgins in the performance of his duties under the employment. I do not overlook the testimony of Higgins and Darnell that they were not paid for the use of the cars. From this testimony the jury could reasonably infer that they were not paid fixed and separate sums for the use of the cars, but that the commissions and percentages were sufficient to cover payment for use of the cars.

Higgins covered a large territory from a station twenty miles from the supervising office. He was required to call upon and collect from every policyholder in the territory and required to attend district meetings. Appellant directed whom to see (policyholders), where to go (their homes or place of work), what to go for (collect premiums due weekly), when to go (once a week or more if necessary), and to attend the district meetings at Joplin. Under the employment he was required to obey these orders. He testified that during his employment he weekly attended the district meetings. Furthermore, the evidence conclusively shows that the use of cars by said agents was the only practical method of conveyance over the territories and from Neosho to meetings at Joplin. If so, the jury could not only find that appellant hired Higgins and his car, but also could find that appellant impliedly directed Higgins to use the car in traveling over his territory and in traveling from Neosho to Joplin to attend the district meetings. The jury also could find that the meetings were so closely connected with the work as to be a part of it. On the question it is said:

"It is a principle embodied in the very relation of master and servant that whatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the scope of employment. No general rule can be formulated which will determine in each case whether the servant was acting within the scope of his employment, the authority from the master generally being gatherable from the surrounding circumstances. Acts may be said to be within the scope of the servant's

employment where specifically directed, or where they are clearly incidental to the master's business. It is not essential that the act be specially authorized by the master. An act is within the scope of the servant's employment, where necessary to accomplish the purpose of his employment, and intended for that purpose. . . ." [39 C. J., p. 1283.]

It is idle to suggest that said meetings were for the benefit of the agents and for that reason appellant is not liable. Everyone knows, and the jury could find, that the meetings were for the benefit of appellant. The directions and instructions may have increased the earnings of the agents, but that does not change the fact that the meetings were for the purpose of increasing appellant's business. It was just as necessary for Higgins to attend the meetings as it was for him to call on each policyholder in his territory.

In this connection I have not overlooked the testimony of Higgins that he had no directions from appellant as to the method of conveyance or route he should take to Joplin. And I have not overlooked the testimony of Darnell that appellant only required the agents to attend the meetings and that it did not care about the conveyance used or the route taken to Joplin. In other words, Higgins only testified that he had no express directions from appellant about the matter. Darnell's testimony could be, and no doubt was, considered by the jury as only an opinion of the witness unsupported by facts. He testified to no facts with reference to the matter. Of course, the jury could disbelieve this opinion evidence. Furthermore, the fact that an agent might travel to Joplin in a conveyance other than a car is not conclusive on the question of whether or not appellant impliedly directed Higgins to use the car for said purpose.

An attempt is made to distinguish the case at bar from Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049. In that case the employer paid the cost of upkeep on the car. The principal opinion siezed upon this as an "express ratification" of the use of the car. There was no question of ratification in that case. It may be assumed that said opinion intended to state that the employer expressly assented to the use of the car by payment of the cost of upkeep. As stated, in the case at bar the jury could find that the employer paid for the use of the car. In the Margulis case the evidence as to the upkeep of the car was not conclusive but was considered with other facts and circumstances in determining whether or not the employer expressly or impliedly directed the use of the car. This is clear from the ruling in that case as follows:

"The mere fact that appellant did not own the automobile causing plaintiff's injury will not preclude a recovery by the plaintiff. The evidence tends to show that the automobile was used in appellant's business with its knowledge and assent. In fact, appellant paid the

cost of upkeep on the car in consideration of use thereof in its service. 'Where, with the express or implied assent of the employer, the employee uses a vehicle which the employee owns in the discharge of his duties, the employer will be liable for any injury occasioned by its negligent operation by the employee while acting within the scope of his employment.' [42 C. J., sec. 900, page 1128; 6 Labatt on Master and Servant, sec. 2282.]

"The evidence showed that Pfaff was appellant's regularly employed salesman, and was operating the car in the performance of his duty to his employer at the time it struck and injured the plaintiff. This showing established prima facie the relation of master and servant between appellant and Pfaff and warranted the submission of the case to the jury." (Citing authorities.)

The principal opinion challenged Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, as holding that "mere knowledge" of the employer that the employee used the car was sufficient to sustain a finding against the employer. It was not so ruled in said case. In part, said opinion states as follows:

"It is apparent from the facts enumerated, which were conceded at the trial, that Waldbauer was, at the time of the accident, acting within the scope of his employment. It was just as necessary for Waldbauer to return as it was for him to go to North St. Louis, as he had no business of his own there but went in the interest of his employer. He was, therefore, about his master's business. A salesman must, of necessity, travel from place to place to perform his duties. It was shown that the company knew Waldbauer was using a car in making the sales and collections."

The principal opinion also siezed upon the last sentence of this paragraph as holding that "mere knowledge" of the employer that the employee was using the car was sufficient to make a submissible case. It was only the statement of a fact to be considered with other facts and circumstances in determining whether or not the employer impliedly directed the use of the car. It was not contended in said case that mere knowledge of the employer that the employee used the car was sufficient to make a submissible case. There was nothing in said case to overrule.

The opinion in the Borgstede case also is challenged for the reason it cites cases involving the construction of special provisions of the Compensation Act. It states that those cases are not necessarily controlling in cases of this character. The principal opinion points to no special provisions of said act. It only states that compensation cases are not *necessarily* authority for determining when an employee is acting within the scope of his employment. Even so, it does not show that the cases cited are not authority on the question ruled. It may be conceded that the basis of liability of an employer to his em-

ployee for compensation under the act is entirely different from the basis of liability of an employer to a third person for damages caused by his employer's negligence. The right of an employee to compensation is based wholly on the statutory provisions, which give this right to "every person in the service of any employer" whose average annual earnings do not "exceed three thousand six hundred dollars" (Sec. 3305, R. S. 1929), including independent contractors, their subcontractors or employees injured on or about the premises of the employer while doing work which is in the usual course of his business; and including even a tenant when the relationship of landlord and tenant is "created for the fraudulent purpose of avoiding liability." [Sec. 3308, R. S. 1929.] However, when it comes to determining the employee's right to compensation for the particular injury, this depends upon whether the injury was caused "by accident arising out of and in the course of his employment." [Sec. 3301, R. S. 1929.]

In order to determine whether or not an employee is acting within the course of his employment so as to be entitled to pay under the Compensation Act, the same common-law principles apply which are considered in the determination of the question of whether an employee is acting within the scope of his employment when he injures a third person. Of course, under the Compensation Law if the accident arises out of the employment, that is, has a casual connection with it, negligence is immaterial, while negligence is the basis of the employer's liability to a third person injured by his employee acting within the scope of his employment. [See discussion in Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601; Teague v. Laclede Christy Clay Products, 331 Mo. 147, 52 S. W. (2d) 880; Crutcher v. Curtiss-Robertson Airplane Mfg. Co., 331 Mo. 169, 52 S. W. (2d) 1019; Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S. W. (2d) 551; Beem v. H. D. Lee Mfg. Co., 337 Mo. 114, 85 S. W. (2d) 441.] The Borgstede case will survive the attack.

The principal opinion also attempts to distinguish Schmitt v. American Press (Mo. App.), 42 S. W. (2d) 969. It states that the truck causing the injury was owned by the employer. It was owned by the employee and was being driven to designated places to pick up unsold newspapers of the employer before reporting at the employer's place of business for regular work. It was a part of the employee's work to pick up said papers. In ruling the case it was said:

"No hard and fast rule can be laid down by which it would be possible to determine in every instance whether the driver of a motor vehicle, in the general employ of another, was acting within the scope of his employment at a given time, but rather each case is to be decided largely upon its own facts, merely keeping in mind the basic idea that the use of the vehicle at the time must have been in the

service of the employer, or while about his business. [Borah v. Zoellner Motor Car Co. (Mo. App.), 257 S. W. 145; Wrightsman v. Glidewell, 210 Mo. App. 367, 239 S. W. 574.] Of course, it makes no difference upon the question of the employer's ultimate liability that the vehicle may belong to the servant himself, provided only that the servant was driving it at the time with the actual or implied consent of his employer, and in the discharge of the duties owed by the servant to him. [Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049; Burgess v. Garvin, 219 Mo. App. 162, 272 S. W. 108; Gordner v. St. Louis Screw Co., 201 Mo. App. 349, 210 S. W. 930.] . . .

"Instead of having required Fletcher to report to its office, as it might have done, there to be told that he should go to Sarah and Olive streets and pick up some unused papers, appellant saw fit to have him go to that point direct from his home. And not only was Fletcher obeying an order of appellant at the time, regardless of when the order may have been given, but the time element is also present in the case, for the evidence shows that it was necessary for Fletcher to pursue the course he took so that he could complete his collections before the time arrived to begin his regular deliveries. Consequently we think the conclusion is inescapable that Fletcher, while on his way on the morning in question, was at all times at a place where, in the performance of his duty, he was required to be, and where appellant's interests were being served."

On principle, I am unable to distinguish the cases. In the case at bar the jury could find from the evidence that Higgins was ordered and required to attend the district meetings; that appellant, in effect, used the car, and that Higgins used the only practical conveyance and route to Joplin.

The principal opinion overlooked Hein v. Peabody Coal Co., 337 Mo. 626, 85 S. W. (2d) 604. In that case the agent negligently injured a third person while traveling in the master's car to attend a meeting of the Coal Institute, a public educational effort where combustion ideas were discussed for the benefit of anyone interested in the sale or use of coal. The master was held liable for the injury. The agent was not instructed or required by the master to attend the meetings, but the district manager insisted that he do so. It was not a company meeting. In the case at bar the servant was directed and required by the master to attend the meetings at Joplin, and, as stated, the jury could infer that the master hired both Higgins and his car for service under the employment.

In view of appellant's statement of the facts, the principal opinion will be cited as inferentially holding the employer not liable for negligence of the employee in driving the car within the assigned territory to make collections. It will be argued that the employer

merely knew that the employee was using the car within said territory for said purpose. As written, it will confuse the bench and bar. It may be that it is intended to inferentially so rule. If so, I register a double dissent.

The principal opinion will not be followed. From time to time it will be distinguished. Finally, it will occupy a position in the line of criticized or overruled cases. In the meantime plaintiff will have been denied justice under the law. The motion for rehearing should be sustained. *Frank* and *Douglas, JJ.*, concur.