LELA BELL FITZGERALD, RESPONDENT, v. GUY A. THOMPSON, TRUSTEE OF THE MISSOURI PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLANT.—184 S. W. (2d) 198.

Kansas City Court of Appeals.   November 6, 1944.

*Thomas J. Cole, Lyman J. Bishop, Gardner Smith, D. C. Chastain* and *Patterson, Chastain & Smith* for appellant.

*Trusty, Pugh & Trusty* and *Fred F. Wesner* for respondent.

BLAND, P. J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $3500, and defendant has appealed.

The facts show that plaintiff was injured on July 1, 1940, when the automobile, in which she was riding, was struck by one of defendant's eastbound trains, at First and Main Streets, in Ottawa, Kansas. Plaintiff, with the object of possibly purchasing the automobile, which she was driving, had procured it from the dealer and had driven it about six blocks prior to the collision. She had owned an automobile before and was an experienced driver. She was well acquainted with the streets and street crossing of the city. The collision occurred about noon. The day was clear and the streets were dry. Defendant's single track railroad runs upon First Street, an east and west street in Ottawa. Plaintiff was driving south on Main Street, a north and south street in said city. Main Street is 100 feet wide between the property lines. First Street is eighty feet in width. The track runs parallel with, and near the center of, First Street. It is 37.3 feet from the north rail to a flasher light warning signal at the west side of Main Street located on the north property line of First Street. First Street

is straight and approximately level for 2000 feet west of Main Street. There is a rise of ten inches from the property line of First Street to the railroad track.

The first street west of Main Street is Walnut Street where the Santa Fe Railroad crosses First Street. It is 350.2 feet from Main Street to the Santa Fe crossing. According to defendant's evidence the flasher light is set in operation when the engine of a train reaches an electric switch 574.5 feet west of the west line of Main Street.

Plaintiff testified that, as she neared the railroad crossing, she noticed the flasher lights were working; that she knew a train was coming, but did not know from which direction; that when she reached First Street she did not look for the approaching train but proceeded on toward the tracks at a rate of speed of about fifteen miles per hour; that when she reached a point about fifteen feet from the tracks she stopped her car and killed her engine; that she tried to start the motor by pushing down on the starter with her right foot; that the car lurched forward coming to rest on the track; that at this time she looked up toward the west and saw the train coming and fainted; that she did not regain consciousness until she reached the hospital; that she made no effort to get out of the car.

Defendant's witness, Scott, testified that he was at his place of business at the northeast corner of the intersection when he saw the automobile stop just north of the tracks; that it then started forward in a series of jumps and lurches; that the automobile stopped almost in the center of the track.

Plaintiff testified that when she looked up and saw the train, it was, she presumed, about 300 feet from her. She was asked if there was any fixed object that "you could place the train by", and she said: "There is the other crossing, the Santa Fe, at Walnut Street and it was beyond that". She was unable to say at what rate of speed the train was approaching, but there was other evidence that its speed was fifteen miles per hour and that the train did not slow up prior to the collision. She further testified that she first saw the flasher light working as she came south on Main Street, she imagined, about a block from it. "Q. Now, is a block 300 feet, 600 feet or what? A. I am sure I couldn't tell you"; that, "I imagine every town block is about 300 feet;" that she would say she was about 300 feet from the flasher light when she first saw it; that it was then in operation and she knew by this fact that a train was approaching.

Defendant introduced the deposition and a statement of plaintiff taken by him in both of which she said that she stopped at the flasher light, which the evidence shows was 37.3 feet from the north rail of the railroad tracks. In her statement she said she stopped about even with the flasher light; that she remembered seeing a train coming from the west at that time; that it was coming awfully fast; that she then stepped on the starter; that she did not know why she did so.

According to plaintiff's evidence a train, under the circumstances, could have been stopped, by an emergency stop, in approximately 125 feet, and by a service application of the brakes, within approximately 300 to 350 feet. According to evidence on behalf of the plaintiff the train did not slow up before striking the automobile and pushed the latter along the track for a distance of approximately 100 feet, when the automobile went off to the left; that the train proceeded about 800 or 900 feet after it hit the automobile and before it stopped.

The fireman testified, by deposition, that he was on the north side of the engine; that the engineer was on the south side; that the witness could see an obstruction on his side, or at the left of the rail of the track, for a distance of 600 feet before the engine reached the crossing in question; that he first saw the automobile when he was about 150 feet from the crossing; that at that time the automobile was about thirty feet from the track; that, "it apparently was making arrangements to stop"; that when it came up to within fifteen feet of the track it stopped; that at that time he was about at the edge of the crossing; that, "Of course, we were at the edge of the crossing then and it commenced to kind of jump along and the first thing we knew, it was so close to the engine and I said, 'We are about to hit a car' and about that time we did hit the car or they did hit us".

The engineer testified: "Q. Did you see any automobiles passing in front of the engine as you were approaching Main Street? A. Yes, they cross there all the time. Q. You are speaking of cars? A. Yes, are always crossing there. Q. How far away or to the west was the engine when the last car appeared? A. Well, I don't recall that. Q. From your side, did you ever see any part of the automobile on the track? A. No, sir."

The case was tried and submitted on the Last Clear Chance Doctrine of the State of Kansas. The Last Clear Chance Doctrine of that State is made up of the following elements:

"(1) Plaintiff, by his negligence, places himself in a position of danger: (2) that his negligence had ceased: (3) that defendant seeing plaintiff in a position of danger, or by the exercise of due care should have seen him in such position, by exercising due care on his part had a clear chance to avoid injuring plaintiff: (4) that defendant failed to exercise such due care, and (5) as a result of such failure plaintiff was injured." [Goodman v. K. C. M. & S. Rld. Co., 137 Kas. 508, 512.]

In that case the court, also, said, l. c. 511, 512, quoting from another Kansas case: "This doctrine can be invoked in negligence cases only where the party relying upon it has by his own prior negligence gotten himself into a predicament from which his subsequent diligence will not avail to extricate him without injury or damage through the act or delict of another party, but where such other party has a fair opportunity—a last clear chance—to avert or minimize the accident, in-

jury or damage, by the exercise of reasonable diligence after the negligence of the first party has ceased.''

Defendant insists that his instruction in the nature of a demurrer to the evidence should have been given, for the reason that plaintiff failed to make out a case under the Last Clear Chance Doctrine of the State of Kansas.

In this connection it is claimed that plaintiff was not entitled to the benefit of her testimony that she drove up to a point fifteen feet from the track before she stopped her car, but is bound by her statement that she stopped her car even with the flasher light, as contained in her deposition and statement taken from her by the defendant. In this connection defendant says that the deposition and statement were admissible in evidence as direct evidence and not merely by way of impeachment. Plaintiff's admissions in her deposition and statement were admissible for all purposes but this does not mean that she is conclusively bound by such admissions. She did not state in her testimony at the trial that her testimony in her deposition or statement was true. Although, she did not attempt to explain the discrepancy in her testimony at the trial and that contained in her deposition and statement, the jury was at liberty to believe her testimony at the trial. [Davidson v. Frisco R. R. Co., 301 Mo. 79; Braden v. Floor & Tile Co., 223 Mo. App. 700; Gibbons v. Wells, 293 S. W. 89, 91; Brown v. Winwood Amus. Co., 225 Mo. App. 1180, 1187; Hill v. Conn. Mut. Life Ins. Co., 235 Mo. App. 752, 769; Newhouse v. Bldg. & Equip. Co., 326 Mo. 1047, 1054; Parent v. Mobile & Ohio R. R. Co., 334 Mo. 1202, 1213; McNatt v. Wab. Ry. Co., 341 Mo. 516, 528.] We have examined the cases cited by defendant on this point, and find them not in point. The cases of Pultizer v. Chapman, 85 S. W. (2d) 400, and O'Malley v. City of St. Louis, 119 S. W. (2d) 785, do not attempt to overrule the Davidson case, and we find them not in point.

However, defendant insists that "measured distances prevail over estimates and opinion evidence'' (these measurements were made by a civil engineer and were shown on a blue print made by him), and that he is entitled to the measured distance of 574.5 feet from Main Street to the switch on the railroad track'which, when contacted by the engine, causes the flasher lights to begin to work; that ''Now the record does not show where the plaintiff was when the flasher light began to work, but it does show by her own testimony that when she was a block away (at least 300 feet) she saw the flasher light working, so as she was driving fifteen miles per hour and the train was traveling fifteen miles per hour when she got to First Street the train must have been not more than 275 feet away, and she said that she drove within fifteen feet of the track before she stopped, which was twenty-five feet farther, and the train could not have been at that time more than 250 feet away''. Defendant says that 250 feet was too short a distance for the train to have been stopped under the circumstances. There

is evidence on the part of the defendant to this effect but the evidence must be taken in its most favorable light to the plaintiff and, as we have stated above, there was evidence on her part that it could have been stopped in approximately 125 feet. However, we are of the opinion that plaintiff is not bound to the theory that she was 300 feet from the flasher light when she first saw it. It is quite apparent from her testimony that she was merely estimating that to be the distance. When asked to fix some object relative to the position of the train she said it was beyond the Santa Fe crossing, which, defendant's evidence shows, was more than 350 feet distant. If the jury saw fit to believe that the flasher light first went on when the train was 574.5 feet from the crossing, they could have concluded that plaintiff was mistaken in her estimate and that she was much nearer the flasher light when she first saw it. In addition to this, the measurement was made by one of defendant's witnesses and, of course, plaintiff is not bound by such testimony, although, she would have been bound by it if it had been testified to by one of her witnesses. [Gannon v. Gas. Co., 145 Mo. 502; Lafferty v. Cas. Co., 287 Mo. 555; Wilson v. K. C. Life Ins. Co., 128 S. W. (2d) 319.] In Borrson v. Mo. Kans. Tex. R. Co., 172 S. W. (2d) 835, 849, it was plaintiff's evidence of measured distances that the court said that she was bound by.

It is insisted that the physical facts show that the train must have been much closer than plaintiff estimated it to be when she went upon the track. Plaintiff said she "presumed" that it was 300 feet away and defendant says that her testimony amounts to a mere guess and is of no probative value. However, as before stated, when asked if there was any fixed object by which she could place the train at the time she saw it, she said, "It was beyond the Santa Fe crossing". Defendant's own testimony shows that the Santa Fe crossing is 350.2 feet west of Main Street. Defendant's witness, Berger, testified that when plaintiff's car was "jumping" the train "was back, I expect, a block".

However, it is claimed that plaintiff's negligence continued up to the time of the collision for the reason that she made no effort to alight from the car. In Jamison v. A. T. & S. F. Ry. Co., 122 Kans. 305, it was held that the duty was upon plaintiff, when his car became stalled on the track, and the train was 400 feet away and approaching at the rate of speed of thirty miles per hour, to alight from his car and, as plaintiff failed to do so, his negligence had not ceased at the time of the collision. This case might be in point were it not for the fact that plaintiff testified that she fainted when she saw the train approaching. Certainly it could not be said that plaintiff's negligence continued after she became unconscious.

Defendant's witnesses testified that it would not be safe to apply the emergency brakes when the train was traveling as slowly as fifteen miles per hour and defendant contends that the only competent evi-

dence that plaintiff offered as to the distance in which the train could have been stopped was the deposition of the engineer, who said it would take 700 to 800 feet to make a stop by the application of the service brakes and around 600 feet to make even an emergency stop. According to plaintiff's witness, Goodman, the train could have been stopped in approximately 125 feet by the use of the emergency brakes and in approximately 300 to 350 feet by the use of the service brakes; but defendant contends that the court erred in admitting the testimony of this witness; that he was not familiar with the braking apparatus on the train in question; that his testimony was not based upon the fact that fifty of the cars were loaded and two were empty, but merely that it was composed of loaded and empty cars; that he stated that by the application of the emergency brakes that the train could have been stopped in "approximately" 125 feet; that what the witness meant by "approximately" is not shown in the record and is left to speculation (there was no motion to strike out the answer on that ground); that the hypothetical question propounded to the witness did not take into account any time for the appreciation of danger or reaction.

The facts in connection with Goodman's testimony show that he stated that he had been railroading since he was fifteen years of age; that he had worked for the Chicago & Alton for a number of years, starting as a fireman on an engine in February, 1910; that he was promoted to the position of engineer in June, 1917; that he worked for the Chicago & Alton continuously from that time until 1935; that he was employed by the Southern Pacific Railway Company as an engineer for ten months; that this employment with that company ceased two months before the day of the trial; that he had operated practically all kinds of trains, freight and passenger, but mostly freight trains.

The evidence shows that the engine involved in the collision was of the 1400 class. The witness testified that he was familiar with engines of the Missouri Pacific Railway Company known as 1400 class; that he had never operated one of them but had been on one about the year 1920; that at that time he made an inspection of the engine; that he had seen them a number of times; that the Chicago & Alton had engines which were practically the same as the Missouri Pacific 1400 class; that the witness had operated these engines for the Chicago & Alton when he was employed by that company; that all of these engines comply with the usual government standards; that practically all of the Missouri Pacific engines and similar engines on the Chicago & Alton are equipped with standard Westinghouse braking equipment.

Defendant's witness, Love, testified that the braking equipment on the 1400 class Missouri Pacific engine was the "standard Westinghouse equipment".

It is true that the defendant's witness, Sugg, testified that the 1400 class engines are not all equipped with the same type of air brakes. He said he did not know the particular type of air brake on the engine in question and could not state definitely in what distance the train could have been stopped, but the jury was not required to believe his testimony as to the different types of air brake equipment on the 1400 class engine, because there was other testimony that the brakes on the 1400 class engines are all of the same type.

Defendant did not attempt to ascertain what particular type of air brakes was on the engine in question, other than that the engine was the 1400 class equipped with standard Westinghouse braking equipment, and in propounding the hypothetical question to the witness as to in what distance the train could have been stopped, did not submit the question of equipment, but merely that the engine in question was that of the 1400 class. We are of the opinion that the court did not abuse its discretion in permitting Goodman to testify as an expert. [Bebout v. Kurn et al., 154 S. W. (2d) 120, 125, 126.]

We have examined Grotjan v. Thompson, 140 S. W. (2d) 796, and other cases cited by defendant on this point and find them not in point. In the Grotjan case, 1. c. 710, it appears that in the hypothetical question it was assumed that the train involved in the collision had standard equipment. There is no such assumption in the case at bar, but such was proved to be a fact.

In propounding the hypothetical question as to the distance in which the train in question could have been stopped, plaintiff assumed that the train was made up of fifty-two cars, partly loaded and partly empty. At that time there was no testimony in the record any more definite as to how the cars were loaded. Afterwards defendant introduced testimony tending to show that fifty of the cars were loaded and two were empty, and that the train's "adjusted" gross weight was 3134 tons.

Defendant's witness, McDermott, was asked: "Q. Is that a light or heavy train? A. It's an average train." It would appear that one referring to a train as one of partly loaded and partly empty cars would mean an average train as to weight, but however this may be, there is another consideration that causes us to believe that there was no reversible error committed in this regard. Defendant's evidence shows that a loaded train cannot be stopped as quickly as an empty train and we might possibly take judicial notice of this fact. However, if a partly loaded train could have been stopped by the use of the emergency brakes, under the circumstances, in 125 feet, and by a service application of the brakes, in 350 feet, a train of empty cars certainly could have been stopped in that distance. According to the testimony of defendant's witness, Love, a train with fifty-two empty cars could have been stopped one-third quicker than "a train of loads", and it follows that if a train of empty cars could have been

stopped in 125 feet, then a train of loaded cars could have been stopped in one-third greater distance or within 167 feet. There is evidence in this case tending to show that the fireman could have seen plaintiff in helpless peril upon the tracks a distance of more than 350 feet before the collision. Under the circumstances, we find there was no reversible error in permitting the witness to answer the hypothetical question in controversy, which submitted no more on this phase than that the train was composed of fifty-two cars, part of which were loaded and part of which were empty.

We cannot say that the testimony of the witness that the train could have been stopped with the emergency appliance in *approximately* 125 feet does not constitute substantial evidence of the fact that it could have been stopped in time to have averted the collision. Webster's International Dictionary defines the word "approximate" to be "(2) Near to exactness; nearly exact; not perfectly accurate". It was said in City of Richmond v. I. J. Smith & Co. (Va.), 89 S. E. 123, 126; "The word 'approximate', as used upon that diagram, are (is) intended to cover negligible deviations from entire accuracy."

The words "approximately" and "approximate" are not synonymous but closely allied in meaning. [Pledger v. B. & O. R. R. Co. (Nebr.), 95 N. W. 1057, 1060.] As to instructions in personal injury cases on the question of causal connection between the negligence and the injury, it is held that the use of the word "approximately" for "proximate" is not error as the two are so nearly synonymous as to amount to practically the same thing. (Brooks v. Muncie & F. Traction Co. (Ind.), 95 N. E. 1006, 1008), and in this State the word "proximate", as used in such cases, is substantially synonymous with the words "direct" and "immediate". [Hudson v. The Wab. Western Ry. Co., 101 Mo. 13, 34, 35; Dickson v. Omaha & St. Louis R. R. Co., 124 Mo. 140, 149.]

Defendant says that the use of the word "approximately" by the witness was equivalent to the use of the word "about". While the two words are sometimes loosely used as synonymous, we think the latter is broader or, at least, a less definite term. Of course, it is not possible for any witness to state the exact number of feet in which a train can be stopped under circumstances like those in the case at bar, but he can state the limits within which a stop can be made. As before stated, plaintiff's evidence shows that the operators of the train had a distance of over 350 feet in which to stop it. The "approximately 125 feet" (or even 167 feet) can reasonably be said to have been within the limits herein involved. While we do not approve generally of the use of such a word as "approximately" in matter of this kind we think that, under the circumstances of this case, the use of the word does not deprive the evidence of substantiality. We have examined Quinley v. Springfield Traction Co., 180 Mo. App. 287, cited by defendant on this point, and find it not in point. In that

case, the size and weight of the car, the kind of motor or motors, the braking appliance, the nature of the load, and the general condition of the car, were all omitted from the hypothetical question. An examination of the record before us discloses that the hypothetical question propounded by plaintiff to her witness, Goodman, contemplates reaction time.

While there is evidence on the part of the defendant that it would have been dangerous to the crew on the rear of the train, as well as to the public, to attempt to make an emergency stop of such a long train going at a rate of speed of only fifteen miles per hour, the witness, Goodman, was asked about this and he did not agree that such was the fact. The witness testified that the train could have been stopped within approximately 125 feet "with safety to the train and with safety to the train crew".

Plaintiff took the deposition of the fireman, Mr. Sissons. She did not read it but it was read to the jury by the defendant. In his argument to the jury counsel for plaintiff stated: " 'And they didn't bring Mr. Sisson. Why? Because he testified in his deposition that he was looking out there and that he didn't see the car at all, until he was—'. THE COURT: Wait there is an objection. What is it? MR. CHASTIAN: My objection is that the argument about Sisson is unfair. The plaintiff themselves took the deposition and we were under no duty to bring him here under that circumstance. MR. CHASTAIN: I ask that counsel be reprimanded for the improper argument. THE COURT: Objection sustained. I think there is no duty on your part to bring him here". Defendant then excepted to the action of the court in failing to reprimand counsel for plaintiff. From other parts of the argument it appears that plaintiff's attorney was referring to the fact that the fireman testified that he could see 600 feet. It is insisted that the court erred in failing to reprimand counsel for the reason that there was no duty upon the defendant to call the witness. Of course, it is a well-recognized rule that no unfavorable inference may be drawn and no unfavorable comment made by counsel in his argument, on account of the absence of a witness whose evidence is equally accessible to both parties. [Atkinson v. United Rys. Co., 228 S. W. 483.] This case, in this connection, is unlike any other case that we have found. Here the testimony of the witness was before the jury and the jury understood that the deposition had been taken by plaintiff and used by defendant. The argument really amounted to counsel for plaintiff saying to the jury that the fireman was not brought in because of what he had said in his deposition. We do not think that the cases cited by defendant apply to the situation here presented. However, if the argument was improper, the court sustained the objection to it with the comment that we have quoted, and we are of the opinion that it was within the discretion of the court to say whether counsel should

have been reprimanded under the circumstances. [State ex rel. v. Deuser, 134 S. W. (2d) 132.]

It appears that during the deliberation of the jury on its verdict, it was excused for the day and when its members went from the court room they passed by where counsel for plaintiff was standing. Some of them, upon their own volition, shook hands with him. Defendant admits that it was not the fault of counsel for plaintiff that this incident occurred. In his affidavit counsel for plaintiff stated that he was embarrassed by the situation. The court and counsel for defendant saw what occurred.

Nothing appears in the abstract concerning the matter until the filing of the motion for a new trial. When the motion was being argued by the parties the above facts were elicited and the following occurred:

"MR. CHASTAIN: The Court will recall I made the objection following Your Honor into your Chambers. THE COURT: Yes, sir, you did".

Defendant now urges that the court should have granted him a new trial on account of the incident in question. While it would appear that no record of the incident was made at the time of its happening, we have, in the record, the statement of the court, made when the motion was being argued, as to what occurred in reference to the action of the defendant taken at the time that the incident occurred. The court at the argument stated that defendant objected to what took place between the jury and counsel for the plaintiff.

It appears from the affidavit of counsel for defendant, filed in support of the motion for a new trial, that the objection consisted of an objection and a request that the jury be not allowed to further consider the case. (This we may assume, amounted to a motion to discharge the jury.) Whether such an objection and motion properly may be shown in this manner, that is, by any record other than that made at the time of the incident, we need not say, as no exception was saved to the action of the court, if any, or the failure of the court to act, at the time the objection and motion were made, or at any other time, so far as the record shows. [Young v. City of St. Joseph, 4 S. W. (2d) 1104; Milliken v. Larabee, 192 S. W. 103.] In addition, rulings on matters of this kind, even when promptly called to the attention of the court, are left largely to the discretion of the trial court. [Aly v. Term. R. Ass'n. of St. L., 119 S. W. (2d) 363.]

Complaint is made of the giving of plaintiff's Instruction No. 1. The instruction is quite long and no useful purpose would be served in setting it forth herein.

It is urged that there is nothing in the evidence to show that when plaintiff fainted such fact should have been apparent to the train crew "within stopping distance". This point would have been more properly raised in connection with the demurrer to the evidence. However, we are unable to say, as a matter of law, that the jury was not

justified in concluding, from all of the evidence, that the train crew could have seen what had happened to plaintiff.

It is insisted that the instruction is erroneous in allowing recovery for negligence on the part of both the fireman and the engineer because the court will take judicial notice of the fact that the boiler of the engine obstructed the view of the engineer to the left. We can not take judicial notice of the fact that the boiler obstructed the engineer's view at a point 350 feet distant from that of the collision. However, we find, in defendant's given instructions, that the words "employees of defendant" are used in connection with their conduct in failing to stop the train before the collision. Having submitted the case to the jury on the same theory, as to this matter, defendant is in no position to complain of plaintiff's instruction in this regard. [State ex rel. Highway Comm. of Mo. v. Williams, 51 S. W. (2d) 538, 541.]

It is insisted that the instruction assumes that, after the automobile came to a stop, plaintiff was in a position of inescapable peril, and did not require a finding that plaintiff could not have gotten out of the automobile. We find no such assumption in the instruction. The instruction has the jury find that plaintiff was in a position of inescapable peril "from which she could herself not escape". Defendant's Instruction "K" told the jury that if plaintiff made no effort to abandon the car they should find for defendant unless they found that after the negligence of plaintiff ceased, defendant with the exercise of ordinary care could have stopped the train and avoided injury to plaintiff. We find no reversible error in the giving of plaintiff's instructions for the reasons assigned by defendant. [See Sutter v. Met. St. Rys. Co., 208 S. W. 851.]

It is claimed that what was meant by "inescapable peril" should have been defined. We find that the instruction does define it and there is no objection to the manner in which it is defined.

The judgment is affirmed. All concur.