**Louis R. WEST, Plaintiff-Respondent,**

v.

**JACK COOPER TRANSPORT COMPANY, a corporation, and Stephen Douglas Hinshaw, Defendants-Appellants.**

No. 23625.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1963.

Ike Skelton, Jr., N. R. Bradley, Ike Skelton, Lexington, for appellants.

Albert Thomson, Harold T. Vandyke, John R. Cleary, Kansas City, for respondent.

ANDREW JACKSON HIGGINS, Special Justice.

This is a suit for damages for personal injuries submitted under the Kansas Last Clear Chance Doctrine. Judgment was for plaintiff for $15,000.00, and defendants have appealed.

On May 23, 1958, plaintiff was operating a Plymouth station wagon northbound in the east lane of U. S. Highway 69. This highway was an asphalt or "blacktop" road. There had been rain during the day. There was some dirt on the roadway and it was wet and slick. As plaintiff drove northward and at a point about 2½ miles south of Stanley, Kansas, the road was downgrade. It curved to the left, then to the right, (in an "S"), and then straightened out for a distance of about one and one-half blocks. The time was about 6:50 P.M., and although lights were in use, it was not yet dark.

Plaintiff stated that he met a southbound car which forced him off the roadway and onto the shoulder; that when he came back to the roadway his car skidded and spun on the road; that it went off on the east side of the road where its right side went against a steep embankment; that after a final spin the car came to rest with its rear against the embankment; that its front headed uphill to the southwest near the center of the highway, and it blocked the east side of the road. He stated that he attempted to drive the car forward and turn it to the right so as to get into his traffic lane; that it went up a few feet; that he killed the engine and the car then fell back into its former posi-

tion; that he saw the lights of defendants' northbound tractor-trailer come around the curve to the south; that he "froze" to the steering wheel and watched its approach; that it seemed as though he were frozen; that the tractor-trailer was sliding and coming down the road broadside; that it struck his car on the left side and knocked it farther north and downhill 10 to 20 feet; that a southbound tractor-trailer had stopped headed toward him and he judged its distance as some 150 feet north of his car.

There was testimony to the effect that defendants' tractor-trailer came to rest crosswise of the highway; that the car when struck was north of a certain tree which was struck and barked by the trailer; that the car when struck was knocked farther northward from the tree.

John H. Allen, a registered land surveyor, stated that he surveyed and measured the distance from the above mentioned tree south to the curve and that such distance was 213 feet; that he could see from the point so determined northward to the tree, and could see the roadway between and what might be in or on it; that the grade of the roadway there is 5.84%.

Frank Wessling, an officer of the Kansas City, Missouri, Police Department, testified as to stopping distances of a tractor-trailer such as the one here involved. He stated he had 16 years of experience in investigating more than 10,000 traffic accidents; that he had attended traffic schools and had studied accidents and their cause and prevention; that he had ridden in the cab of tractors similar to the one here while conducting experiments in studying traffic accidents. He stated that a truck such as driven by defendant when travelling at 30 miles per hour, (the speed indicated by the evidence), would travel 45 feet per second; that stopping distance under conditions as shown here would be 88 feet after application of brakes, and that total stopping distance would have to include reaction time; that reaction time for an average person is ¾ second. There was evidence that Hin-

shaw had his foot on the brake of his tractor prior to the time he decided to attempt to stop. The witness stated that this fact would cut the reaction time to ½ second during which time the vehicle would travel 22 feet, and that stopping distance of the truck including such reaction time would then be 110 feet. He also stated that with the truck 200 feet south of the Plymouth, a point when and where the driver could have seen the Plymouth on the highway in a position of danger, the truck could have been driven to the left of the car and thus have avoided the collision. According to some of the testimony it would have been 200 feet to the Plymouth and another 150 feet to the other tractor.

Charles Gomerdinger testified he was in a car following a tractor-trailer southbound on 69 highway. He stated that from his view north of the accident he saw plaintiff's car spinning on the road; that it went into an embankment and set out in the highway from east to west; that the truck ahead of him stopped 60 to 80 feet north of plaintiff's car. He admitted having previously stated that distance to be 200 feet. He stated that he saw defendants' truck come from the south around the curve to the south and saw it start skidding; that it came down the highway broadside and struck the automobile.

Defendant Hinshaw stated that when he drove the tractor-trailer around the curve he could see down the road from 100 to 200 feet; that he saw plaintiff's car across the roadway 100 feet north; that he then had his foot on the brake and promptly applied same; that the tractor-trailer began to skid and slid sidewise down the highway. He stated that he saw a tractor-trailer parked farther down the road and did not think

he could pass the station wagon to the west without striking the other tractor parked to the north.

Robert B. Lund, Trooper, Kansas Highway Patrol, qualified as an expert on traffic control and accident prevention with many years experience and training. He gave his opinion that defendants' tractor-trailer going 30 miles per hour could not have been stopped under the conditions existing at the time and place of the collision within less than 185 feet including reaction time.

This case is governed by the Last Clear Chance Doctrine of Kansas which differs from the Humanitarian Doctrine of Missouri.

Definitive statement of the Kansas Last Clear Chance Doctrine appears in a 1958 case as follows: "The essential elements under the doctrine of last clear chance are: (1) The plaintiff by his own negligence placed himself in a position of danger; (2) that the plaintiff's negligence had ceased; (3) that the defendant seeing the plaintiff in a position of danger, or by the exercise of due care should have seen the plaintiff in such position, by exercising due care on his part had a clear chance to avoid injuring the plaintiff; (4) that the defendant failed to exercise such due care; and (5) as a result of such failure on the defendant's part plaintiff was injured." Gibbs v. Mikesell, 183 Kan. 123, 325 P.2d 359, l. c. 366.[1] This or virtually identical statement of the doctrine has been adopted by the Missouri courts in cases [2] arising under Kansas law as does the instant case.

■ Defendant contends that plaintiff failed to state a last clear chance case because he pleaded that he was not negligent in a prayer for relief on primary negligence

1. Additional frequently cited definition by Kansas courts consistent with this statement may be found in Jamison v. Atchison, T. & S. F. R. Co., 122 Kan. 305, 252 P. 472; Goodman v. Kansas City, M. & S. R. Co., 137 Kan. 508, 21 P.2d 322; Ross v. Fleming, 165 Kan. 279, 194 P.2d 491.

2. See for example Vail v. Thompson, 360 Mo. 1009, 232 S.W.2d 491; Marshall v. St. Louis-San Francisco R. Co., Mo., 234 S.W.2d 524; Foster v. Kansas City Southern R. Co., Mo., 306 S.W.2d 521; Fitzgerald v. Thompson, 238 Mo.App. 546, 184 S.W.2d 198.

which was coupled with allegations and prayer for relief under last clear chance.

Without setting forth plaintiff's petition in detail, suffice it to say that plaintiff in the first instance pleaded that he was free from negligence. He also pleaded a denial of any negligence and stated that if he was guilty, his negligence had ceased prior to the collision and in time for defendant to have acted so as to avoid injuring him. The Supreme Court of Kansas was faced with a similar pleading in Gibbs v. Mikesell, supra, and held, 325 P.2d 1. c. 366–367, that pleading primary negligence and the last clear chance doctrine in the alternative was not repugnant. In Eubank v. Kansas City Terminal Ry. Co., 346 Mo. 436, 142 S.W.2d 19, the Supreme Court of Missouri affirmed a judgment for plaintiff under a submission of primary negligence *and* negligence under the Kansas last clear chance doctrine. We view plaintiff's petition here in light of these authorities and hold that such alternative pleading does not defeat plaintiff's statement of a cause of action.

■ Defendants next contend that plaintiff made no case because the evidence fails to show when plaintiff's negligence ceased, when his peril became inescapable, where defendants' truck was at such time, and what defendants could have done to avoid the accident. It is the law as previously stated that the negligence of plaintiff which placed him in a position of danger must have ceased before the last clear chance doctrine may be effectively invoked. It is also true that if plaintiff's negligence continues until the collision occurs, or to a time after which defendant could not in the exercise of due care avoid the collision, then, no submissible case is made. In other words, so long as plaintiff's negligence continues it is concurrent with that of defendant, it has not ceased, and thus, an essential element of plaintiff's case would be missing.

■ It is plaintiff's theory here that he came into a position of inescapable danger or peril at a point when defendants' tractor-trailer was 200 to 213 feet south and upgrade of plaintiff; that defendants could swerve to avoid within that distance, or could then stop within 110 to 185 feet. There is evidence to that effect and there is also evidence to the effect that plaintiff's position was then clearly visible to defendant. It is also shown that plaintiff's car was blocking the east side of the road. Obviously, if Hinshaw continued unchecked on his course, collision would result. These circumstances placed a duty on defendant to stop or swerve in order to avoid collision, if possible, which defendants did not do here. Defendants contend that even so, plaintiff was not in a position of danger or inescapable peril because he could have yet escaped from his vehicle and that it was his duty to do so; that failing so to do, his negligence continued, thereby excusing defendants. In this connection defendants cite Vail v. Thompson, supra. There, plaintiff drove his vehicle onto a railroad crossing. A train 400 feet away was approaching at 30 miles per hour. It would have taken the train 9 seconds to reach plaintiff. The court there held that plaintiff had sufficient time to escape from the car but did not do so and that his failure made him guilty of contributory negligence as a matter of law.

In the case at bar there is evidence to show that plaintiff had "a very few seconds" after he came to a stop in which to act. The evidence further shows that plaintiff "froze" or was "frozen" to the wheel as the tractor approached. In the Vail case the court said, 232 S.W.2d 1. c. 495, that plaintiff could simply have stepped from the car to the side of the track and the train would have carried the car away from him. He would have thus been in a place of safety. Here, the evidence shows there to have been a steep embankment to the rear of plaintiff's car. Likewise, defendants' vehicle is shown to be skidding and bearing down on plaintiff, ultimately striking and knocking him 10 to 20 feet down the road. Whether plaintiff could

have stepped out and up the bank or have otherwise gotten to a place of safety in view of the tractor-trailer coming cross-wise down the road at him is a matter of speculation. It is just as reasonable for him to have believed that he was safer inside the automobile and better protected there than on the roadside. It appears that whether he could have made a decision to run within the time available and whether he should have attempted to do so were for the jury to say upon consideration of all the facts in evidence. In Leinbach v. Pickwick Greyhound Lines, 135 Kan. 40, 10 P.2d 33, plaintiff was a passenger in a Dodge automobile that collided at an intersection with a Ford automobile. After this collision and while the Dodge was standing still on the east side of the slab, defendant's bus struck the Dodge in the rear. As here the defendant contended that plaintiff was guilty of continuing contributory negligence as a matter of law. The court there stated, 10 P.2d 1. c. 36: "This situation furnished a fair talking point before the jury, but, when we consider that the driver of the Dodge would need a few moments, at least, to decide what to do in such unusual circumstances, it cannot be said that contributory negligence was shown as a matter of law." In Fitzgerald v. Thompson, 238 Mo. App. 546, 184 S.W.2d 198, a situation somewhat analogous to the case at bar existed. There, as plaintiff neared a railroad crossing she knew a train was coming. She proceeded on toward the tracks and when about 15 feet from them she stopped her car and killed her engine. She tried to start the car and as she pushed on the starter the car lurched forward coming to rest on the track. She then looked up and saw the train coming and fainted. She of course made no effort to get out. The court in that case refused to convict plaintiff of continuing negligence. We feel that plaintiff's being "frozen" in the case at bar is akin to that situation. Upon a review of the evidence we cannot say that plaintiff was guilty of continuing negligence as a matter of law in not having acted differently.

In connection with Instruction No. 1, plaintiff's verdict directing instruction, it is first argued that it was not authorized by the pleadings because plaintiff had pleaded that he was not guilty of negligence. We have previously discussed plaintiff's pleading and held it to be a proper alternative pleading. What we said there disposes of this contention adversely to defendants.

It is next contended that there is no evidence to support the instruction because there is no evidence as to when plaintiff's peril became helpless and inescapable. We have previously discussed certain of the evidence on this question and we hold that there was evidence from which the jury could properly decide the question.

■ Defendants contend that the instruction tells the jury that plaintiff was in a position of peril when his car stopped against the bank thereby withdrawing that issue from the jury. After hypothesizing other elements of plaintiff's submission the instruction continues: " * * * and · *if you further find* that at the time plaintiff's Plymouth automobile described in evidence came to a stop on the east side of the highway at the place described in the evidence, the plaintiff Louie West was in a position of imminent peril of being struck and injured by the defendants' tractor and trailer, and that the defendant, Hinshaw, by the exercise of ordinary care could have seen the plaintiff in the aforesaid position of imminent peril, *if you so find,* * * *." (Emphasis supplied.) We think the language in this particular to be sufficiently clear in that it permits the jury to make a finding and does not constitute a direction. Certainly we cannot say that such language withdrew this finding from the jury.

■ Defendants next contend that the instruction is erroneous because it fails to require a finding that plaintiff's negligence had ceased. In Eubank v. Kansas City Terminal Ry. Co., supra, plaintiff was operating a streetcar on Southwest Boulevard, Rosedale, Kansas. Defendant was operating an engine on tracks which inter-

**648**

sected the streetcar tracks. Plaintiff stopped about 12 or 14 feet from the railroad track within the distance required by statute. He looked and saw the engine and thinking it to be standing started forward and was caught and struck on the crossing. Defendant attacked the last clear chance instruction, inter alia, on this same ground. In that case the instruction submitting last clear chance hypothesized the facts of the case in much the same manner and form as in the instant case. At l. c. 26 of 142 S.W. 2d the court discussed the element of plaintiff's contributory negligence as ceasing when plaintiff is in a position of imminent peril and held that the question was for the jury. We have previously discussed both the element of plaintiff's negligence ccasing and the element of plaintiff's position of peril and, under the facts and circumstances of this case, we think the instruction adequately submitted this question to the jury. ·

■ It is also contended that the instruction does not require a finding that defendants could have avoided the collision and that defendants could have swerved without injury to other persons and property. We have mentioned the evidence relating to sight and stopping distances and the opportunity of defendants to pass to the west of plaintiff's vehicle. From that portion of the instruction previously set out the instruction continues: "in time thereafter, if so, by the exercise of ordinary care, and by the use of the appliances on said tractor-trailer, and *with reasonable safety to himself and* defendants' *tractor-trailer*, to have *stopped* said tractor-trailer, if you so find, or to have *slackened the speed thereof sufficiently to have avoided striking plaintiff's car,* if you so find, *or to have operated said tractor-trailer on the west side of the highway and around plaintiff's automobile and in a manner so as to have avoided collision* with the plaintiff's automobile, if you so find, * * *." (Emphasis added.)

3. See also Hein v. Peabody Coal Company, 337 Mo. 626, 85 S.W.2d 604, 611;

Certainly this is sufficient to require a finding that the defendants could have avoided the collision. It is likewise sufficient to require a finding that defendants could have swerved the tractor-trailer without injury to Hinshaw or the tractor-trailer. In this case there is evidence tending to show that the west side of the road was not obstructed as to Hinshaw in any manner from a point 200 to 213 feet south of plaintiff to a point as much as 200 feet to the north of plaintiff. On this point we believe the case of Brown v. Callicotte et al., Mo., 73 S.W.2d 190, 195, to be pertinent. There the court said: "Moreover, the instruction required a finding that Callicotte could have swerved to the north with safety to himself and his automobile, which necessarily included a finding that he could have done so without colliding with the parked cars, because otherwise he could not have done so with safety to himself and his car." [3] In view of the facts in the instant case we think the finding required is also sufficient to cover the question of injury to other persons and property on the highway.

■ Finally, defendants claim error in the use of the word "imminent" in Instruction No. 1, contending that the doctrine limits the submission of plaintiff's peril to a use of the words "helpless" or "inescapable". There are many cases in which plaintiff's peril or danger is so described. We are directed to no case, however, in which the use of "imminent" has been held prejudicial. We have previously noted that the essential elements of a last clear chance case are expressed in terms of plaintiff's "danger", or his "position of danger", without the use of any such characterization. In cases in both Kansas and Missouri the word "imminent" has been used to describe and submit plaintiff's peril or danger. Leinbach v. Pickwick Greyhound Lines, supra, 10 P.2d l. c. 42; Eubank v. Kansas City Terminal Ry. Co., supra, 142 S.W.2d l. c. 26. We reject this contention.

Day v. Banks, Mo.App., 102 S.W.2d 946, 953.

We would not recommend Instruction No. 1 as a model. We believe, however, under the facts in this case, that it contained adequate hypothesis to require a jury finding of all the essential elements of a Kansas last clear chance case, and we therefore find it free of prejudicial error.

■ Error is predicated on the fact that plaintiff's car had swerved off the road, then came onto the road and thence into an embankment from which it was partially driven, and then fell back; that the medical witnesses could not properly take such first accident into their consideration of injuries caused by defendants in the collision or second accident; that the hypothetical questions asked of such witnesses were error and that there is no showing as to which accident caused plaintiff's injuries. Doctors Friedman and Lichtor testified as to plaintiff's injuries, their nature and extent, and that they could have been and were due to the collision. There was no evidence whatsoever tending to prove that plaintiff was injured upon being forced off the pavement and plaintiff testified that he was "shook up" but not injured when he came against the embankment prior to being struck by defendants. The whole of the evidence was before the jury as to the extent and cause of plaintiff's injuries and in view of the record here we find no reason to criticize this phase of the trial.

■ It is urged that there was error in receiving testimony from witnesses Harker and Allen as to visibility and sight and as shown by photographs, measurements and sightings taken at the accident scene. This is based on a contention that conditions were not shown to be substantially the same at the time such photographs, measurements and sightings were made as when the accident occurred. The evidence shows that these matters and the conditions under which they were made were explored thoroughly before the court and jury by direct and cross-examination. Under the facts in this case we believe the judge's rulings were well within his discretion, and

that any differences in conditions were proper questions for the jury in determining the weight to be given such evidence.

■ Defendants contend that the testimony of Officer Wessling upon hypothetical question should have been stricken because it did not take into consideration the curve and mud on the pavement and their effect on braking. The question assumed the pavement to be of macadam, wet and slippery. The witness answered that all roads are slick and slippery when wet and defendants made no objection at that time to the failure to include mud in the assumption. Defendants cross-examined about the effect that mud would have on defendants' braking and the witness stated he would need to know the location and extent of the mud. Cross-examination continued extensively, and it was eventually directed by counsel that the witness consider the curve in question and that mud covered 5 feet of the east half of the pavement. The witness thereafter answered that it would make slight difference; that the mud only affected a minute portion of the 88 feet of braking distance. We think that contention should also be denied.

■ Finally, it is urged that the verdict is so excessive as to be a result of bias, passion and prejudice. It is clear under the law that unless the verdict is so out of proportion as to shock the judicial conscience it must stand. There was medical testimony to the effect that the spinous processes of plaintiff's first sacral segment were fractured; that he suffered disability and recurrent pain as a result of the injuries he received, and that conditions resulting therefrom would be permanent. Dr. Friedman's testimony to that effect was positive. Dr. Lichtor prescribed a back support or brace to alleviate plaintiff's condition, which plaintiff was wearing at the time of trial 3½ years after the injuries were received. Plaintiff had expended considerable sums of money for medicines, medical treatment and hospitalization. In addition it appears that plaintiff lost 7

weeks of work wherein he could have earned $125.00 per week. Under the evidence in this case we cannot say that the judicial conscience is shocked by a verdict for $15,000.00.

The judgment is affirmed.

All concur.

SPERRY, C., not sitting.