Louie R. WEST, Respondent,

v.

JACK COOPER TRANSPORT COMPANY, a Corporation, and Stephen D. Hinshaw, Appellants.

No. 50546.

Supreme Court of Missouri,

En Banc.

July 13, 1964.

Rehearing Denied Sept. 14, 1964.

Albert Thomson, Harold T. VanDyke, John R. Cleary, Kansas City, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel, for plaintiff-respondent.

Ike Skelton, Jr., N. R. Bradley, Ike Skelton, Skelton & Bradley, Lexington, of counsel, for appellants.

EAGER, Chief Justice.

This case was transferred here from the Kansas City Court of Appeals by our order of transfer. Its opinion appears at 372 S.W. 2d 642. The suit is one for personal injuries in which plaintiff recovered $15,000 against the driver and the owner of a transport

tractor-trailer. The submission was solely under the Kansas "last clear chance" doctrine; the collision occurred on old Highway 69 about two and one-half miles south of Stanley, Kansas, on May 23, 1958. The facts are rather fully stated in the opinion of the Court of Appeals, and we shall state only a brief outline, with such additions to the original statement as may seem pertinent.

Plaintiff, driving a Plymouth station wagon north, had been forced partially off of the blacktop road by an approaching car. This occurred at about the middle of a downgrade "S" curve which swung rather sharply to the left and then to the right. Plaintiff testified that the right side of his car came in contact with a high bank on the right curve, there being little or no shoulder; the car then came back on the road and went into a spin. The road was wet and slippery. The car spun and slid on through the curve and came to rest at about the beginning of a straightway, still on the downgrade; it stopped substantially crosswise of the east lane of the highway. The back of the car was against the bank; the front end was at the center of the highway; the car was headed somewhat southwest, or slightly back toward the direction from which it had come. We are unable to tell whether the rear wheels were in a concrete drain or off the slab. Plaintiff testified that he was somewhat "shook up"; he tried to drive the car forward, and it did go ahead three or four feet, but he was unable to proceed farther; he did not recall specifically whether the motor stalled, but the car rolled back to its original position. In a "very few seconds" thereafter he saw the tractor-trailer outfit of defendant Cooper, driven by Hinshaw, coming around the curve to the south. The evidence most favorable to plaintiff indicates that this first view was at a distance of 213–225 feet. Immediately, plaintiff said, the transport (it was in fact a transport for the conveyance of automobiles, traveling empty) started skidding and it came on down the road sideways covering the whole road, until the tractor struck plaintiff's car, first near the left front wheel and, almost instantly, at the left rear wheel. The car was knocked or moved a distance of from 8–20 feet, 10–20 according to plaintiff, 8–10 according to others. After the collision the vehicles blocked the whole road, the rear of the trailer being off the road on the west side. While plaintiff watched the transport skidding towards him he did nothing; he testified that he just "froze" to the wheel. There was evidence that the slope from south to north along this piece of road was 5.84%. It will not be necessary for us to consider plaintiff's injuries.

While plaintiff was in his original spin down the slope, the driver of a tractor-trailer approaching from the north saw what was happening and stopped north of the place where plaintiff's car came to rest. He stopped, of course, in his own right or west lane. A car traveling behind that tractor-trailer also stopped. From this point the driver of the tractor-trailer watched the subsequent events; during part of this time he was standing on his running board. The testimony as to the distance of this unit from plaintiff's car varied. There was substantial evidence from three witnesses that this distance was from 50 to 80 feet (north of plaintiff's car), although plaintiff made an estimate of 150 feet.

The defendant driver testified: that as he rounded the last curve on the wet, slippery roadway, at about 30 miles an hour, he first saw the other transport apparently stopped, and almost immediately saw plaintiff's car extended across the east (his) side of the road about 100 feet away; that he already had his foot on the brake pedal and immediately applied his foot brake; that this takes effect first on the rear dual wheels of the trailer, next on the rear dual wheels of the tractor, and last on the front axle of the tractor; that his unit began to skid, the trailer veered out to the left and slid down the hill sideways; that there was dirt on the right side of the road, and that the trees and brush on the curve (at that time) grew out to the edge of the pavement; that in the time and distance available he could

not have swerved to the left side of the road without hitting the other tractor-trailer. The unit of the defendants was 50 feet long, overall. Hinshaw testified that he tried to straighten out his tractor and trailer with the steering wheel, but was unable to do so.

Various points were briefed by appellants in the Court of Appeals and most of them are re-briefed here. We have determined that we need consider only two,—the submissibility of the case under the Kansas last clear chance doctrine and Plaintiff's Instruction No. 1. On the first, we agree with the Court of Appeals; on the other we disagree. In all other respects we concur in the opinion of the Court of Appeals, and we shall not extend this opinion by discussing those points.

 On the contention that a verdict should have been directed for the defendants, it is again urged vigorously here that the evidence failed to show when plaintiff's negligence ceased, when his peril thus became helpless and inescapable, where defendant's truck was at that time, and that defendants could thereafter have taken action to avoid the collision under the existing road conditions. Basically, defendants insist that plaintiff's negligence continued because he could have opened his door and stepped out of the car at any time during the 20 to 30 seconds prior to the actual collision, and particularly during the 5 seconds or so in which defendant's truck was skidding down the hill. It is true that under the Kansas law a plaintiff whose negligence continues to the time of collision and operates concurrently with that of defendant, may not recover under this doctrine. Vail v. Thompson, 360 Mo. 1009, 232 S.W.2d 491; Eubank v. Kansas City Terminal R. Co., 346 Mo. 436, 142 S.W.2d 19; Leinbach v. Pickwick-Greyhound Lines, 138 Kan. 50, 23 P.2d 449, 92 A.L.R. 1. It is also true that there must be substantial evidence to show that the defendant could have acted to avoid the collision after plaintiff's situation was discovered or should have been discovered.

Ross v. Fleming, 165 Kan. 279, 194 P.2d 491; Marshall v. St. Louis-San Francisco Ry. Co., 361 Mo. 234, 234 S.W.2d 524. It has been a little difficult for this writer to understand the statements in many of the Kansas cases to the effect that plaintiff's negligence must have *ceased* when one of the very foundations of the Kansas last clear chance doctrine is that plaintiff's own negligence placed him in the perilous position, and there he remains; obviously, the theory has been that the occurrence of *helpless* peril is concurrent with a cessation of negligence, even though the peril was brought on initially by plaintiff's negligence. This has been suitably explained in the very recent case of Letcher v. Derricott, 191 Kan. 596, 383 P.2d 533, where the Court said at loc. cit. 536: "The use of the phrase 'that plaintiff's negligence had ceased' has caused some confusion. The phrase means, and perhaps the better term is, 'that the plaintiff had, by her own negligence, placed herself in a position of peril from which she could not extricate herself.' If the plaintiff could extricate herself from the danger, and did not do so, her negligence had not ceased. If the plaintiff could not extricate herself from the danger, her negligence had ceased." Thus the remaining question is,—what could the defendant do after plaintiff's position became helpless?

 We agree with the Court of Appeals that the jury here, on the most favorable evidence, could have found that plaintiff's position was helpless from the time defendants' unit began to skid sideways down the road, in effect sweeping the whole road; and also, that on the most favorable evidence a submissible case was made with reference to the defendants' ability to act in avoidance. The plaintiff's situation here was not so simple as stepping out of a truck and off of a railroad track in 9 seconds at a crossing (Vail, supra). We must also recognize that plaintiff could hardly have been entirely normal in his reactions after his spinning and sliding experience, and that he also had some duty to consider getting his car off the highway and out of the way of other traf-

fic. We are unwilling to say here, as we would need to do, that plaintiff was guilty of continuing negligence as a matter of law in remaining in his car. The matter of distances and the stopping ability of the defendant driver have been adequately discussed by the Court of Appeals.

▮ Plaintiff's Instruction No. 1 told the jury that if, after defendant Hinshaw saw or could have seen plaintiff in a position of "imminent peril" he could "with reasonable safety to himself and defendants' tractor-trailer" have stopped, slackened or operated his vehicle to the west and around plaintiff but failed to do so and was thereby negligent, then plaintiff should recover. (We have omitted various included elements not material to our present discussion.) It will immediately be noted, as it was noted by the Court of Appeals, that this submission made no reference to the safety of, or likelihood of injury to, any *other* persons or property. The Court of Appeals said: "In this case there is evidence tending to show that the west side of the road was not obstructed as to Hinshaw in any manner from a point 200 to 213 feet south of plaintiff to a point as much as 200 feet to the north of plaintiff." It concluded, citing Brown v. Callicotte, Mo., 73 S.W.2d 190, that on the facts here the finding that defendant could have acted without injury to himself or his vehicle necessarily included a finding that he could have done so with reasonable safety to others. It is upon this point that we disagree with the Court of Appeals. In Callicotte, supra, there was no evidence of the presence of any other persons who might have been endangered or injured. The Court there said in part, 73 S.W.2d loc. cit. 195: "* * nor was there any evidence tending to show that Callicotte, by swerving to the north so as to miss the wagon, could possibly have endangered other persons. There was no evidence that any other person was there or thereabout." Under such circumstances, the instruction may well have been held not to be prejudicial, and it is at least doubtful whether there was any evidence upon which

to submit the element of possible injury to others. The statement made there that since the instruction given required a finding that the defendant could have swerved with safety to himself and his car, it necessarily included a finding "that he could have done so without colliding with the parked cars" (in which there were no occupants) may have been true under the facts of that case. No such assumption should be relied on to negate the possibility or probability of injury to other *persons* where the evidence shows the presence of one or more such persons in the immediate vicinity and more or less directly in defendant's line of travel, had he elected to swerve. The driver of the southbound truck had stopped in the west lane and, during at least a part of the time involved, he was standing on his running board. There was substantial evidence that this vehicle was from 50 to 80 feet north of plaintiff's car. While plaintiff is entitled to submit a case on his own theory of the evidence, he cannot *ignore* an element which definitely, and by reason of substantial evidence, constitutes one of the factual issues in the case. Evans v. Colombo, Mo., 319 S.W.2d 549. Even had that truck been 150 feet away as plaintiff testified, the danger of an injury to its driver would still have been a distinct possibility had Hinshaw attempted to swerve his fifty-foot long transport around plaintiff and through the intervening gap.

What we have said concerning the Callicotte case applies also to Hein v. Peabody Coal Co., 337 Mo. 626, 85 S.W.2d 604, and Day v. Banks, Mo.App., 102 S.W.2d 946. Thus, we do not hold that the omission in all cases of the element of danger to others is necessarily prejudicial, but we do hold that its omission in the present case constituted prejudicial error. To this effect we note: Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, and Pennington v. Carper, Mo., 309 S.W.2d 596. In the latter case this Court said, 309 S.W.2d loc. cit. 601: "Among the constitutive requirements of a plaintiff's humanitarian case in proper instances is the fact that the defendant could have avert-

ed the impending injury with safety to himself and others. The doctrine does not require a defendant to save a plaintiff at the expense of himself or others. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484 [2]. Plaintiff's submission in this respect conditioned a recovery only on defendant's ability to have averted injuring plaintiff 'with safety to the defendant's automobile and said defendant.' The testimony of Mr. and Mrs. Skinner and of defendant established that the Skinner automobile was a little ahead of and in the lane immediately to the left of defendant. There was grave danger of damage to the Skinner automobile and of injury to its occupants had defendant swerved to his left. The instruction ignores this essential element of the humanitarian doctrine and was properly refused by the court. Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 11 [2, 11]; Martin v. Lingle Refrigeration Co., Mo., 260 S.W.2d 562, 567 [6]."

▮▮ The Missouri humanitarian cases universally recognize that, before plaintiff may recover, the jury must find that the defendant could, in the exercise of the appropriate degree of care, have averted the injury to plaintiff without injury to himself, or others. Largo v. Bonadonna, Mo., 269 S.W.2d 879; Price v. Nicholson, Mo., 340 S.W.2d 1; Yarrington v. Lininger, Mo., 327 S.W.2d 104; Cunningham v. Thompson, Mo., 277 S.W.2d 602; Page v. Hamilton, Mo., 329 S.W.2d 758. We do not find any Kansas case, and none has been cited, which expressly considers the element of "injury to himself or others" in discussing the last clear chance doctrine. However, the point is basic and we hold that the submission thereof in a proper case constitutes a necessary element of recovery under that doctrine as well as under our humanitarian theory (where fairly required by the evidence), at least until the Kansas Court holds otherwise. Neither doctrine requires a non-negligent defendant to save a negligent plaintiff at the risk of injury to himself or some other person. One reason, perhaps, for the absence of such discussion in the Kansas cases, is that many of them are railroad crossing cases, where the evidence presented no such question.

▮ Defendants here insist that the submission in Instruction No. 1 of plaintiff's "imminent peril" rather than his "helpless and inescapable" peril, was improper. The term so used does not conform fully to the theory of the Kansas cases, and upon another trial the instruction should be worded so as to conform. It is true that in Eubank v. Kansas City Terminal R. Co., 346 Mo. 436, 142 S.W.2d 19, 26, the term "imminent peril and danger" was used, but this was followed by the words "from which he could not extricate himself * * *." We do not propose to reword the instruction but counsel would be well advised to reconsider the Kansas law, as they now seem to rely largely upon Missouri humanitarian cases for the approval of the term used.

The circumstances tending to show Hinshaw's ability to swerve and avoid the collision were not particularly strong. However, considering his opportunity to make a decision as soon as he viewed the situation, and plaintiff's testimony as to the distance of the other transport truck from his car, we hold that there was a submissible issue. We are not overly impressed with the argument concerning the deficiencies of plaintiff's expert testimony on this point; after all, the jury, as a matter of common knowledge, has some sources of information on such a question.

The points argued here concerning the evidence have been considered by the Court of Appeals, and we concur in its rulings; and, of course, the evidence upon another trial may not occasion the same objections. No question remains now on the alleged excessiveness of the verdict.

The judgment is reversed for the error in giving Instruction No. 1, and the cause is remanded for a retrial.

All concur.